IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-10113

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOSEPH CLIFTON CHARLES,

Defendant - Appellant.

_____

July 31, 2002

Before KING, Chief Judge, and JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, WIENER, BARKSDALE, EMILIO M. GARZA, DEMOSS, BENAVIDES, STEWART, PARKER, DENNIS and CLEMENT, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

We granted rehearing *en banc* in this sentencing appeal in order to determine whether theft of a motor vehicle is a crime of violence under United States Sentencing Guideline ("U.S.S.G.") § 4B1.2(a)(2), requiring the enhanced sentence imposed on Charles. We hold that simple automobile theft is not a crime of violence. We therefore VACATE Charles' sentence and REMAND for re-sentencing.

I

The defendant, Joseph Clifton Charles, pled guilty in this case to possession of a firearm as a felon, in violation of 18

U.S.C. § 922(g)(1).[1]  Earlier, in July 1997, Charles had been convicted of one count of motor vehicle theft.  The question therefore is what kind of sentence is appropriate for the instant firearm conviction in the light of his previous conviction for automobile theft.

For offenses involving the unlawful possession of a firearm, U.S.S.G. § 2K2.1(a)(6) provides a base offense level of 14 if the defendant is a "prohibited person," in this case, a felon.  However, U.S.S.G. § 2K2.1(a)(4) provides for an increased base offense level of 20 if the defendant had one prior felony conviction of a "crime of violence," as defined in § 4B1.2(a).  The district court determined that theft of a vehicle is a crime of violence under § 4B1.2(a)(2), basing its conclusion on a determination that the controlling precedent was United States v. Jackson, 220 F.3d 635, 639 (5th Cir. 2000).  There we held that unauthorized use of a motor vehicle is indeed a crime of violence under § 4B1.2(a)(2).  Thus, in sentencing Charles, the district court began with a base offense level of 20 and reduced the offense level by 3 for acceptance of responsibility, to level 17.  Based on Charles' criminal history category of five, the district court

---

[1] Section 922(g)(1) makes it unlawful for a person who has been convicted of a crime punishable by imprisonment for a term exceeding one year to possess a firearm in or affecting interstate commerce.  Title 18 U.S.C. § 924(a)(2) provides for a penalty of up to ten years for this offense.  In October 1997, Charles had pled guilty to the felony offense of unlawfully carrying a weapon on a licensed premises, and was sentenced to two years' imprisonment.

sentenced Charles to 51 months' imprisonment, a three-year term of supervised release, and a mandatory special assessment of $100. Charles filed a timely notice of appeal of his sentence.

A panel of this court, considering itself bound by Jackson, affirmed. See United States v. Charles, 275 F.3d 468 (5th Cir. 2001). A majority of active judges then voted to hear the case *en banc*. United States v. Charles, 284 F.3d 567 (5th Cir. 2002).

## II

The outcome of this appeal depends on whether simple motor vehicle theft is a crime of violence under U.S.S.G. § 4B1.2(a)(2). We should note at the outset, however, that this question has been confused because of the differing definitions of "crime of violence" that appear in 18 U.S.C. § 16 ("the statute") and the definition promulgated under § 4B1.2(a) of the sentencing guidelines, which applies specifically to firearms offenses.[2]

---

[2]Section 16 defines "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

In contrast, § 4B1.2(a) defines "crime of violence" as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

3

While § 16(a) and § 4B1.2(a)(1) are virtually identical, § 16(b) and § 4B1.2(a)(2) are clearly different.[3] Section 16(b) applies to the use of force against person and <u>property</u>, whereas § 4B1.2(a)(2) only applies to conduct that presents a serious potential risk of physical injury to another <u>person</u>.[4] Other differences include: §16(b) focuses on a risk of physical <u>force</u>, whereas § 4B1.2(a)(2) focuses on a risk of physical <u>injury</u>; § 16(b) requires a "substantial risk," whereas § 4B1.2(a) requires a "serious potential risk"; and § 16(b) focuses on the "nature" of the felony, whereas § 4B1.2(a)(2) focuses on "conduct." <u>See</u> <u>Jackson</u>, 220 F.3d at 637; <u>United States v. Chapa-Garza</u>, 243 F.3d 921, 925-26 (5th Cir. 2001).

---

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

[3]Although § 16 has general application under the Comprehensive Crime Control Act of 1984, in which Congress created the Sentencing Commission and authorized it to promulgate sentencing guidelines, <u>see</u> <u>United States v. Parson</u>, 955 F.2d 858, 864 (3d Cir. 1992) (citing S. Rep. No. 98-225, 98th Cong., 1st Sess. 307 (1983), in 1984 U.S.C.C.A.N. 3182, 3486), and although the Sentencing Commission has promulgated a different definition of "crime of violence" under § 4B1.2(a), no one in this appeal has raised the issue of whether the Sentencing Commission has the authority to depart from § 16. Consequently this is not an issue in this case. Nevertheless, we should observe that the Third Circuit has concluded that the Sentencing Commission has the power to adopt a different definition of "crime of violence" from that in § 16. <u>See</u> <u>Parson</u>, 955 F.2d at 866.

[4]This difference is also true of § 16(a) and § 4B1.2(a)(1).

4

Nevertheless, in the past we have used § 16(b) cases to interpret § 4B1.2(a)(2) cases, and vice-versa. For example, in Jackson, in which we held that unauthorized use of a vehicle ("UUV") is a crime of violence under § 4B1.2(a)(2), we noted that "[w]e are not unsympathetic to Jackson's argument that UUV is not what one might typically consider a 'crime of violence,' [but] we do not write on a clean slate . . . ." Jackson, 220 F.3d at 639. We looked for guidance to United States v. Galvan-Rodriquez, 169 F.3d 217 (5th Cir.), cert. denied, 528 U.S. 837 (1999), an immigration case, in which we held that UUV is a crime of violence under § 16. Other cases in this circuit, however, have made clear that § 16 and § 4B1.2(a) are different, and that what qualifies as a crime of violence under one does not necessarily qualify under the other.[5] To the extent that our prior cases have conflated the § 16(b) and § 4B1.2(a)(2) definitions of "crime of violence," they are overruled.

We therefore hold that sentences involving possession of a firearm by a felon,[6] which also involve a prior conviction for an alleged "crime of violence," are to have the "crime of violence" determination made only in accordance with the definition in § 4B1.2(a) and its accompanying commentary.

---

[5] See, e.g., United States v. Chapa-Garza, 243 F.3d 921, 925–26 (5th Cir. 2001).

[6] See U.S.S.G. § 2K2.1, applicable to the unlawful receipt, possession, or transportation of firearms or ammunition, and to prohibited transactions involving firearms or ammunition.

III

In determining whether simple motor vehicle theft is a crime of violence under § 4B1.2(a)(2), we are bound to follow each sentencing guideline and accompanying policy statements. See United States v. Urias-Escobar, 281 F.3d 165, 167 (5th Cir. 2002) (citing Mistretta v. United States, 488 U.S. 361, 391 (1989) and Williams v. United States, 503 U.S. 193, 199-201 (1992)). Further, the guidelines' commentary is given controlling weight if it is not plainly erroneous or inconsistent with the guidelines. See id. (citing Stinson v. United States, 508 U.S. 36, 42-45 (1993)). We review the district court's interpretation and application of the Sentencing Guidelines *de novo.* See United States v. Deavours, 219 F.3d 400, 402 (5th Cir. 2000).

As noted previously, U.S.S.G. § 2K2.1 sets forth base offense levels for crimes involving the unlawful possession of a firearm, and applies an enhanced base offense level of 20 if the defendant has a previous felony conviction for a "crime of violence." U.S.S.G. § 2K2.1(a)(4)(A). Application Note 5 to § 2K2.1 refers to § 4B1.2(a) and its Application Note 1 for the definition of "crime of violence." Section 4B1.2(a) defines "crime of violence" as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct

6

that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a) (2000). Application Note 1 to this section ("Application Note 1") states:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

We must decide whether simple motor vehicle theft, under Texas law, falls under this definition, that is, whether, by its nature, it "involves conduct that presents a serious potential risk of physical injury to another." In Texas, theft is defined as "unlawfully appropriat[ing] property with intent to deprive the owner of property." Tex. Pen. Code § 31.03(a). "Appropriation of property is unlawful if: (1) it is without the owner's effective consent; (2) the property is stolen and the actor appropriates the property knowing it was stolen by another; or (3) property in the custody of any law enforcement agency was explicitly represented by any law enforcement agent to the actor as being stolen and the actor appropriates the property believing it was stolen by another." Tex. Penal Code § 31.03(b). Charles' indictment from his motor vehicle theft offense charges that he:

7

> [did] unlawfully appropriate, by acquiring or otherwise exercising control over property, to-wit, an automobile, of the value of $1500 or more, and less than $20,000, with intent to deprive the owner [] of the property . . . [and did] intentionally operate one motor-propelled vehicle, to-wit, an automobile, knowing that he did not have the effective consent of the owner . . . .[7]

In United States v. Fitzhugh, 954 F.2d 253 (5th Cir. 1992), we held that, in determining whether an offense is a crime of violence under § 4B1.2 or § 4B1.1, we can consider only "conduct 'set forth in the count of which defendant was convicted,'" and not the other facts of the case. Id. at 254 (citation omitted). This principle is confirmed by Application Note 1 to § 4B1.2, which states that "[o]ther offenses are included as 'crimes of violence' if . . . the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted . . . by its nature, presented a serious potential risk of physical injury to another." Based on the language in § 4B1.2(a)(2) and in Application Note 1, we hold that a crime is a crime of violence under § 4B1.2(a)(2) only if, from the face of the indictment, the crime charged or the conduct charged presents a serious potential risk of injury to a person. Injury to another need not be a certain result, but it must be clear from the indictment that the crime itself or the conduct specifically charged posed this serious potential risk.

From the face of Charles' indictment, it cannot be said that his conduct in committing the offense presented a serious potential

---

[7]Simultaneously with this opinion, we GRANT the motion of the United States to supplement the record with Charles' indictment.

risk of physical injury to another. His conduct presented a risk of injury to <u>property</u>, that is, the automobile. However, there is no suggestion in the indictment that Charles' conduct in stealing the car presented a serious potential risk of physical injury to another person. He simply exercised control over property (the automobile) and drove it without the owner's consent.

Application Note 1, by requiring that other crimes must "by [their] nature" present a "serious potential risk of physical injury to another," calls for a categorical inclusion or exclusion of crimes and/or conduct. Simple motor vehicle theft does not, by its nature, present this risk. It therefore is not a crime of violence under § 4B1.2(a)(2).

IV

For the reasons we have thus explained, we overrule our holding in <u>United States v. Jackson</u>, 220 F.3d 635 (5th Cir. 2000). Further, we limit our holding in <u>United States v. Galvan-Rodriquez</u>, 169 F.3d 217 (5th Cir.), <u>cert. denied</u>, 528 U.S. 837 (1999) to its property aspects and to § 16 cases. We therefore REVERSE the judgment, VACATE the sentence, and REMAND this case for re-sentencing in the light of this opinion.

REVERSED, VACATED and REMANDED.

RHESA HAWKINS BARKSDALE, Circuit Judge, with whom JONES and CLEMENT, Circuit Judges join, concurring in part and dissenting in part:

> **The theory of probabilities is at bottom nothing but *common sense* reduced to calculus**.

Pierre Simon de LaPlace*, Oeuvres, vol. VII, Théorie Analytique des Probabilitiés [1812-1820], introduction* (emphasis added).

Common sense is the key to applying the "otherwise involves conduct" portion of U.S.S.G. § 4B1.1(a)(2). Along that line, I concur in the following standard set by the majority:

> Based on the language in § 4B1.2(a)(2) and in [its] Application Note 1, we hold that a crime is a *crime of violence* under § 4B1.2(a)(2) only if, *from the face of the indictment, the crime charged or the conduct charged* presents a serious potential risk of injury to a person. *Injury to another need not be a certain result, but it must be clear from the indictment that the crime itself or the conduct specifically charged posed this serious potential risk*.

**Maj. Opn.** at 8 (emphasis added). I must respectfully dissent, however, from its holding that, under this controlling standard, Charles' conduct does not constitute a crime of violence.

The operative phrase in § 4B1.2(a)(2) — "*otherwise* involves conduct that [by its nature, app. n.1] presents a *serious potential risk* of injury to another" (emphasis added) — contains, for purposes of probabilities, a somewhat unusual use of the word

"serious".  Of course, "potential" is understood as "possible"; "risk", as "chance".  2 THE NEW SHORTER OXFORD ENGLISH DICTIONARY 2310, 2609 (1993).  But, what does "serious" add to the mix?

"Serious" does not modify "injury", as in "serious bodily injury".  *See, e.g.,* U.S.S.G. § 1B1.1 app. n.1(i) (2001).  Instead, it modifies "potential risk":  "serious potential risk".  As so employed, "serious" means "of significant degree or amount, worthy of consideration".  *Id.* at 2785.  It does *not* mean that injury to another is *probable*.  At bottom, § 4B1.2(a)(2) calls for the application of *common sense*.

Therefore, for Charles' car theft to constitute a crime of violence, there must have been a "significant possible chance" of injury to a person when, as detailed in the conduct charged in his indictment, Charles "unlawfully *appropriate[d]* ... an automobile ... and intentionally *operate[d]* it".  (Emphasis added.)  In the light of this charged conduct, and contrary to the majority's apparent view, far more is at stake than "simple car theft".  For example, because the charged conduct included Charles' operating the stolen vehicle, the theft took on an additional, dangerous characteristic:  the unauthorized operation of the vehicle.

Common sense (not to mention judicial notice) informs us of the numerous "significant possible chances" of injury to another that come into play when an automobile is stolen and then operated by the thief.  Not infrequently, for such, or similar,

11

circumstances, we read or hear about such injuries, *including deaths*. In these circumstances, there is a "significant possible chance" of injury: to the person(s) from whom the vehicle is stolen, or who might otherwise be in or near the vehicle; and to persons in the vicinity of the automobile when it is operated under the attendant stress to the thief and urgency to escape with the vehicle, resulting in quite likely dangerous driving and the serious risk of a collision or hitting someone not in a vehicle. Add to this the extra, even greater, "significant possible chance" of injury to another if, at or near the time of the theft, or even later, the thief driving (operating) the stolen vehicle is pursued by police, especially at high speed and, most especially if, as a result, the fleeing thief and/or pursuing police are not stopping for stop signs or red lights.

In short, common sense tells us that, for the conduct charged, the possible combinations of factors leading to injury to another are almost limitless. *A fortiori*, I cannot understand how the charged conduct does not equate with a "serious potential risk of physical injury to another". Surely, it does. Accordingly, I must respectfully dissent from the majority's holding otherwise.

HAROLD DeMOSS, Circuit Judge, specially concurring:

I concur fully in the holding of this opinion that simple automobile theft is not a crime of violence. I write separately to amplify the nature and extent of the confusion and ambiguities which exist as to the meaning of the term "crime of violence" which this opinion addresses only in a limited way. A computerized word check indicates that the term "crime of violence" is used 108 times in the United States Code and in the United States Sentencing Guidelines. In many of the instances where this term is used there is a cross-reference to a statutory definition. From a numerical standpoint, the most frequently used cross-reference is that to 18 U.S.C. § 16, as set forth in the majority opinion. In some instances, the term is used without any cross-reference to a definition and in those instances it is impossible to determine the meaning to be ascribed to the term "crime of violence" as used therein.

There are, in fact, eight different definitions of the term "crime of violence" in the United States Code and the United States Sentencing Guidelines. These different definitions can be located at the following citations: 18 U.S.C. § 16, 18 U.S.C. § 924(c)(D)(3), 18 U.S.C. § 3156(a)(4), Fed. R. Crim. P. 32(f)(2), 28 U.S.C. § 540A(c), 42 U.S.C. § 13726(a)(1), U.S.S.G. § 2L1.2, application notes (B)(ii) and U.S.S.G. § 4B1.2(a). There are a variety of common elements in each of these definitions, but they each have differing words and phrases. I can see no rational

justification for a defined term such as "crime of violence," which is used as frequently as the term "crime of violence" is used, to have this many different meanings. I can see no rational justification for a prior conviction being categorized as a "crime of violence" under one of these definitions but not under another. Finally, I can see no rational justification for some of these definitions being closed-ended and self-contained; and others of these definitions have catch-all clauses which invite speculation and differing results depending upon who (prosecutor, defense counsel, probation officer, or judge) is making the interpretive call which these catch-all provisions require. In my view, the level of ambiguity generated by these varying definitions is totally unacceptable in a criminal justice system that claims to be based on due process. In my view, blame for this state of disarray falls squarely on the shoulders of the Congress (specifically the Judiciary Committees of the House and the Senate) and on the Sentencing Commission and its staff. It is not the task of the Judicial Branch to say which of these varying definitions the Congress intended to be controlling; nor is it the task of the Judicial Branch to make specific what Congress has failed to specify.