Revised February 5, 2003

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 02-20116
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ENRIQUE VARGAS-DURAN,

Defendant - Appellant.

Appeal from the United States District Court
For the Southern District of Texas

January 16, 2003

Before EMILIO M. GARZA and CLEMENT, Circuit Judges, and HUDSPETH[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

Enrique Vargas-Duran appeals the district court's determination that his Texas conviction for

intoxication assault was a "crime of violence" for purposes of the 16-level sentencing enhancement

under § 2L1.2(b)(1)(A)(ii) of the 2001 version of the United States Sentencing Guidelines.  Vargas-

_____

[*] District Judge of the Western District of Texas, sitting by designation.

Duran contends that, in light of our decision in *United States v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001), his prior conviction for intoxication assault is not a "crime of violence" under § 2L1.2(b)(1)(A)(ii) because it does not have as an element the intentional use of force against a person.[1]  We disagree.

Vargas-Duran, a citizen of Mexico, was discovered in the United States after being arrested for driving while intoxicated.  He had previously been deported following Texas felony convictions for burglary of a vehicle and intoxication assault.  Vargas-Duran pled guilty to being unlawfully present in the United States in violation of 8 U.S.C. § 1326(a) and (b)(2).  At sentencing, he objected to the categorization of his 1996 intoxication assault conviction as a "crime of violence" for the purposes of the 16-level enhancement under § 2L1.2(b)(1)(A)(ii) of the 2001 version of the Sentencing Guidelines.  The district court overruled the objection and sentenced him to sixty-four months of imprisonment and three years of supervised release.

We follow both the Sentencing Guidelines and their accompanying policy statements.  *See United States v. Urias-Escobar*, 281 F.3d 165, 167 (5th Cir. 2002) (citing *Mistretta v. United States*, 488 U.S. 361, 391 (1989), and *Williams v. United States*, 503 U.S. 193, 199-201 (1992)).  In

---

[1] Vargas-Duran also contends, solely for the purpose of preserving the issue for further appeal, that the "aggravated felony" provision of 8 U.S.C. § 1326(b)(2) is unconstitutional in the wake of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  He concedes that this argument is foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which *Apprendi* expressly declined to overrule.  *See Apprendi*, 530 U.S. at 489-90 ("Even though it is arguable that *Almendarez-Torres* was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested, Apprendi does not contest the decision's validity and we need not revisit it for purposes of our decision today . . . .") (footnote omitted).  Thus, no further consideration is necessary.  *See United States v. Dabeit*, 231 F.3d 979, 984 (5th Cir. 2000) ("'The Supreme Court has left no doubt that as a constitutionally inferior court, we are compelled to follow faithfully a directly controlling Supreme Court precedent unless and until the Supreme Court itself determines to overrule it.'") (quoting *Hopwood v. Texas*, 84 F.3d 720, 722 (5th Cir. 1996)).

addition, we give the Sentencing Guidelines' commentary controlling weight unless it is plainly erroneous or inconsistent with the guidelines themselves. *See id.* (citing *Stinson v. United States*, 508 U.S. 36, 42-45 (1993)). We review the district court's interpretation and application of the Sentencing Guidelines *de novo*. *United States v. Charles*, 301 F.3d 309, 312-13 (5th Cir. 2002) (en banc).

Under the 2001 version of § 2L1.2, a prior offense qualifies as a "crime of violence" for purposes of the 16-level sentencing enhancement if it is either "an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another" or an offense enumerated in Application Note 1(B)(ii)(II). U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G."), § 2L1.2, cmt. n.1(B)(ii); *see United States v. Rayo-Valdez*, 302 F.3d 314, 316 (5th Cir. 2002) ("The language of § 2L1.2 says that 'crime of violence' means that which is in subparagraph I, and includes that which is in subparagraph II.").[2] Because intoxication assault is not one of the offenses enumerated in Application Note 1(B)(ii)(II), it is a "crime of violence" under § 2L1.2(b)(1)(A)(ii) only if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Rayo-Valdez*, 302 F.3d at 316. We need not discuss the facts underlying Vargas-Duran's prior conviction, since we "look only to the fact of conviction and the statutory definition of the prior offense" to determine whether a prior conviction qualifies as a predicate offense for sentencing enhancement purposes. *Taylor v. United States*, 495 U.S. 575, 602 (1990). "Congress did not intend sentencing hearings to become retrials of the underlying conduct involved in the defendant's prior federal or state convictions." *United States v.*

---

[2] These offenses are "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including sexual abuse of a minor), robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling." U.S.S.G., § 2L1.2, cmt. n.1(B)(ii).

*Velazquez-Overa*, 100 F.3d 418, 421 (5th Cir. 1996).

Because the Texas offense of intoxication assault requires proof that an intoxicated offender "cause[] serious bodily injury to another," TEX. PENAL CODE ANN. § 49.07 (Vernon 1994),[3] we conclude that it has as an element the *use* of force against the person of another. Clearly, the requirement that the offender "cause[] serious bodily injury" encompasses a requirement that the offender use force to cause that injury. Vargas-Duran has not demonstrated that an offender could be convicted under § 49.07 for causing "serious bodily injury" without actually using physical force against a person. We have not found any Texas decision in which an offender caused serious bodily injury without using force. In *Gonzalez v. Texas*, 2000 WL 1721159 (Tex. App.) ) Houston [1st Dist.] Oct. 12, 2000, no pet.), the only decision cited by Vargas-Duran in support of his argument, the Texas Court of Appeals affirmed the defendant's conviction for intoxication assault where he drove his vehicle into a parked car, which in turn struck a child standing nearby. *Id*. at *1. Contrary to Vargas-Duran's contention, the defendant in *Gonzalez* clearly used force, albeit indirectly, against the person of another. Because causing "serious bodily injury" qualifies as using force, we conclude that intoxication assault as defined by the 1994 version of § 49.07 is a crime of violence for purposes of the 16-level enhancement under Application Note 1(B)(ii)(I) to the 2001 version of § 2L1.2.[4]

---

[3] Under the version of § 49.07 of the Texas Penal Code in effect at the time of Vargas-Duran's conviction, a defendant is guilty of a third degree felony if he or she "by accident or mistake, while operating an aircraft, watercraft, or motor vehicle in a public place while intoxicated, by reason of that intoxication cause[d] serious bodily injury to another." TEX. PENAL CODE ANN. § 49.07 (Vernon 1994). Following Vargas-Duran's conviction, § 49.07 was amended to include serious bodily injuries caused by operating or assembling an amusement ride while intoxicated. TEX. PENAL CODE ANN. § 49.07 (Vernon Supp. 2003). This revision does not apply to the instant matter, nor does it affect our analysis.

[4] The dissent posits that this conclusion is in conflict with our decision in *United States v. Gracia-Cantu*, 302 F.3d 308 (5th Cir. 2002). We perceive no conflict, however, because *Gracia-*

Vargas-Duran contends that, because his prior conviction does not have as an element the *intentional* use of physical force, it is not a "crime of violence" for purposes of § 2L1.2(b)(1)(A)(ii). In support of his position, Vargas-Duran relies on our decision in *United States v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001), in which we applied a categorical approach and held that a Texas felony conviction for driving while intoxicated (DWI) was not a "crime of violence" under 18 U.S.C. § 16(b) because the offense did not involve "recklessness as regards the substantial likelihood that the offender will intentionally employ force against the person or property of another in order to effectuate the commission of the offense." 243 F.3d at 927.

Perhaps the obvious should be stated first: *Chapa-Garza* did not apply the current version of § 2L1.2. Section 2L1.2 was substantially revised after we decided *Chapa-Garza*, and the definition of "crime of violence" at issue in *Chapa-Garza* is not the same as the definition at issue here. *See United States v. Caicedo-Cuero*, 312 F.3d 697, 709-11 (5th Cir. 2002) (discussing the 2001

---

*Cantu*, which was decided under the prior version of § 2L1.2, stated only that:

> Gracia-Cantu persuasively argues that his prior offense does not constitute a crime of violence under 18 U.S.C. § 16(a) because section 22.04(a) of the Texas Penal Code, the statute criminalizing injury to a child, does not require that the perpetrator actually use, attempt to use, or threaten to use physical force against a child. Rather, section 22.04(a) is results-oriented in that the culpable mental state must relate to the result of a defendant's conduct rather than to the conduct itself. The government concedes that, because the statutory definition of the offense does not explicitly require the application of force as an element, 18 U.S.C. § 16(a) does not apply to Gracia-Cantu's offense of injury to a child. Accordingly, we need not consider the issue further.

302 F.3d at 311-12 (citation omitted). Importantly, in this case the Government does not concede that § 49.07 does not require the application of force as an element of the offense. Thus, the 16-level enhancement under § 2L1.2, according to the Government, applies to the Texas offense of intoxication assault.

amendments to § 2L1.2's definition of "crime of violence"). Section 16(b), from which *Chapa-Garza* gleaned a state of mind requirement, 243 F.3d at 925-27, no longer applies for purposes of the 16-level enhancement.[5]

Second, unlike intoxication assault, Texas felony DWI does not have as an element the use of force. "The crime of Texas felony DWI is committed when the defendant, after two prior DWI convictions, begins operating a vehicle while intoxicated." *Chapa-Garza*, 243 F.3d at 927. Third, *Chapa-Garza* did not analyze the Texas felony DWI statute under § 16(a), the language of which is similar to Application Note 1(B)(ii)(I). *Compare* 18 U.S.C. § 16(a) (covering any "offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another") *with* U.S.S.G., § 2L1.2, cmt. n.1(B)(ii) (covering any "offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another"). The analysis in *Chapa-Garza* was instead based on the catch-all language of § 16(b), which applies to "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). In fact, *Chapa-Garza* noted that "18 U.S.C. § 16(b) is the *only* justification for the 16-level enhancement advanced by the government."

---

[5] The pre-2001 version of § 2L1.2, which increased the base offense level by 16 for all prior "aggravated felony" convictions, was replaced with a sliding scale of enhancements based on the seriousness of the prior conviction. *See* U.S.S.G., Supplement to Appendix C, Amendment 632, at 222-25 (2001). The Sentencing Commission stated that this amendment responded to concerns that "the breadth of the definition of 'aggravated felony'" under § 2L1.2 "sometimes results in disproportionate penalties." *Id*. at 224. Significantly, the 2001 amendment to § 2L1.2 narrowed the definition of "crime of violence" for purposes of the 16-level enhancement by replacing the definition in § 16 with that in Application Note 1(B)(ii). However, the amended application notes for § 2L1.2 retain § 16's definition of "crime of violence" for purposes of the 8-level "aggravated felony" enhancement under § 2L1.2(b)(1)(C).

243 F.3d at 924 (emphasis added). *Chapa-Garza*'s analysis of § 16(b) would have been entirely unnecessary had the crime of Texas felony DWI contained as an element the "use of force," as does the Texas crime of intoxication assault at issue in this case.

We do not agree that *Chapa-Garza*'s interpretation of § 16(b)'s language applies in this context. As discussed above, unlike Texas felony DWI, intoxication assault has as an element the use of force, and therefore, unlike *Chapa-Garza*, we are not confined to analyzing whether this offense is a "crime of violence" under the catch-all language of § 16(b). We question whether *Chapa-Garza* would have read a state of mind requirement into the revised definition of "crime of violence" under Application Note 1(B)(ii) to the 2001 version of § 2L1.2.[6]

---

[6] Other circuits have read a state of mind requirement into § 4B1.2, which defines "crime of violence" as including offenses that have "as an element the use, attempted use, or threatened use of physical force against the person of another." *See United States v. Rutherford*, 54 F.3d 370, 372-74 (7th Cir. 1995); *United States v. Parson*, 955 F.2d 858, 866 (3d Cir. 1992). Vargas-Duran urges us to apply this interpretation to the language of Application Note 1(B)(ii)(I). However, we have never read a state of mind requirement into § 4B1.2. We therefore decline to impose a state of mind requirement in this context. Moreover, although *Parson* noted in unreasoned dicta that § 16(a) "requires specific intent to use force," 955 F.2d at 866, this does not persuade us that we must read a state of mind requirement into Application Note 1(B)(ii)(I). Courts have reached varying determinations regarding the necessity of a state of mind requirement under § 16. *Compare United States v. Trinidad-Acquino*, 259 F.3d 1140, 1146 (9th Cir. 2001) ("[T]he 'crime of violence' definitions do not require an intentional use of force, but they do require a volitional act."), *Dalton v. Ashcroft*, 257 F.3d 200, 206-08 (2d Cir. 2001) ("Although an accident may properly be said to involve force, one cannot be said to *use* force in an accident as one might use force to pry open a heavy, jammed door." (emphasis in original)), *and Bazan-Reyes v. I.N.S.*, 256 F.3d 600, 609-11 (7th Cir. 2001) ("[O]ur finding that the word 'use' requires volitional conduct prohibits a finding that drunk driving is a crime of violence under § 16(a).") *with Omar v. I.N.S.*, 298 F.3d 710, 720 (8th Cir. 2002) ("We reject Omar's claim that § 16(b) requires an element of intent for a crime of violence and his attempt to read more into the words 'may be used' than they can fairly support."), *Tapia-Garcia v. I.N.S.*, 237 F.3d 1216, 1222-23 (10th Cir. 2001) (finding the Board of Immigration Appeals' decision that "the statutory definition of crime of violence in 18 U.S.C. § 16(b) does not require intentional conduct" reasonable), *and Le v. U.S. Attorney General*, 196 F.3d 1352, 1354 (11th Cir. 1999) (holding that prior conviction for causing serious bodily injury while driving under the influence was a "crime of violence" under § 16(a) "because one element of the offense includes the actual use of physical force").

In light of the plain language of the revised guideline and its commentary, we decline to extend *Chapa-Garza*'s state of mind requirement. Nothing in the amended version of § 2L1.2 or its commentary indicates that the use of force must be intentional for a prior offense to qualify as a "crime of violence" for purposes of the 16-level enhancement. We must assume that the Sentencing Commission was aware of our holding in *Chapa-Garza* when it amended § 2L1.2 and would have explicitly incorporated a state of mind requirement had it intended to do so. It did not.[7] Absent explicit direction, we will not read a state of mind requirement into the guideline. *See United States v. Fry*, 51 F.3d 543, 546 (5th Cir. 1995) (holding that, where "the language of section 2K2.1(a)(3) makes no reference to the defendant's mental state," "[t]he section is plain on its face and should not . . . be read to imply a scienter requirement."); *cf. United States v. Myers*, 104 F.3d 76, 81 (5th Cir. 1997) ("As a straightforward matter of textual interpretation, we will not presume that a statutory crime requires specific intent in the absence of language to that effect.").[8]

---

[7] We also note that the Sentencing Commission did not include a catch-all provision similar to § 16(b) in the revised definition of "crime of violence" for the 16-level enhancement. Although the dissent reasons that the definition of "crime of violence" in Application Note 1(B)(ii)(I) is a stronger candidate for imposing a state of mind requirement than that in § 16(b), only the broad catch-all language of § 16(b) requires narrowing. The dissent's reliance on dicta in a footnote in *Park v. I.N.S.*, 252 F.3d 1018 (9th Cir. 2001), is misplaced as *Park* rejected *Chapa-Garza*'s holding. *Id.* at 1024 n.7 (concluding that "§ 16(b) . . . does not require that force be used intentionally.").

[8] Although the dissent posits that the words "use of physical force" should have the same meaning under all of the definitions of "crime of violence" incorporated by § 2L1.2, the panel in *Caicedo-Cuero* correctly noted:

> Although rendering the guideline less clear than is desirable, § 2L1.2's implication of two distinct definitions of drug trafficking crimes is neither repugnant to principles of statutory construction nor inconsistent with the Sentencing Commission's prior practice. Looking to a parallel situation within § 2L1.2, relating to the dual definitions of "crimes of violence," we note that the Sentencing Commission's practice of incorporating multiple definitions of the

-8-

Because the Texas crime of intoxication assault has as an element the use of force against the person of another, we conclude that the district court did not err in imposing the 16-level enhancement. We therefore AFFIRM the sentence imposed by the district court.[9]

ENDRECORD

---

same term is, it turns out, not new.

312 F.3d at 708-09.

[9] Vargas-Duran also contends that his intoxication assault and burglary convictions are not "aggravated felonies" for purposes of the 8-level enhancement under § 2L1.2(b)(1)(C). Because the district court correctly determined that the 16-level enhancement applied to the intoxication assault conviction, it never reached these arguments. Thus, we need not address this contention on appeal.

EDITH BROWN CLEMENT, Circuit Judge, dissenting:

Two reasonable propositions underlie the majority's decision: first, that one can *use force against another* without intending to use that force; and second, that a criminal statute's requirement that the defendant cause serious bodily harm also encompasses the requirement that the defendant *use force* to bring about the harm. Both premises are contrary to settled precedent. I respectfully dissent.

## I. Conflict with *Chapa-Garza*

The majority concludes that it is possible for a crime to "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another," U.S. SENTENCING GUIDELINES MANUAL § 2L1.2 application note 1(B)(ii)(I) ("U.S.S.G."), even where the crime does not require the defendant to have *intentionally* used force. That conclusion collides with this Court's decision in *United States v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001), which held that a Texas felony DWI conviction was not a "crime of violence" for purposes of a neighboring Sentencing Guidelines subsection, also involving the interpretation of *using physical force against another*. We stated:

> The criterion that the defendant use physical force against the person or property of another is most reasonably read to refer to intentional conduct, not an accidental, unintended event. THE AMERICAN HERITAGE COLLEGE DICTIONARY (3rd ed. 1997) defines the verb "use" as:
>
> > "1. To put into service or apply for a purpose; employ. 2. To avail oneself of; practice: use caution. 3. To conduct oneself toward; treat or handle: used his colleagues well. 4. To seek or achieve an end by means of; exploit: felt he was being used. 5. To take or consume; partake of: She rarely used alcohol"
>
> The four relevant definitions indicate that "use" refers to volitional, *purposeful*, not accidental, employment of whatever is being "used".

*Id.* at 926 (emphasis in original). In a dissent from the denial of en banc rehearing in *Chapa-Garza*, Judge Barksdale, *joined by no other judge*, cited a different dictionary in disagreeing with the *Chapa-*

*Garza* panel and arriving at the same conclusion underlying the majority's decision today: "It is true that 'use' may more often refer to the intentional use of force; but without question, force may be used accidentally." 262 F.3d 479, 482 (5th Cir. 2001) (Barksdale, J., dissenting) (footnote omitted).

The majority attempts to distinguish *Chapa-Garza* by pointing out, correctly, that the *Chapa-Garza* panel was interpreting 18 U.S.C. § 16(b),[10] which is somewhat different than Guideline § 2L1.2. *Compare* 18 U.S.C. § 16(b) ("any other offense that is a felony and that, by its nature, involves the substantial risk that physical force against the person or property of another may be used in the course of committing the offense") *with* U.S.S.G. § 2L1.2 application note 1(B)(ii)(I) ("an offense under federal, state, or local law that has an element the use, attempted use, or threatened use of physical force against the person of another"). In fact, § 2L1.2 is almost identical to § 16(b)'s neighbor, 18 U.S.C. § 16(a).[11]

Although § 16(b) is different (it only covers felonies, for instance), the dispositive language in *Chapa-Garza* was substantially identical to the language at issue here. The *Chapa-Garza* panel focused *only* on the phrase "physical force against the person or property of another may be used"; here, we are focused *only* on the phrase "use of physical force against the person of another." I see no difference between the two, except that the former pertains to property, as well as persons.

---

[10]The issue in *Chapa-Garza* was whether the prior offense was an "aggravated felony" for purposes of a 16-level enhancement under Guideline § 2L1.2. 243 F.3d at 923. The definition of "aggravated felony" ultimately pointed to, among other things, the statutory definition of "crime of violence" in 18 U.S.C. § 16. *Id*. In 2001, the "aggravated felony" enhancement was reduced to eight levels, instead of 16, but the same definition applies. *See* U.S.S.G. app. C, comment to amend. 632 (2001).

[11]Section 16(a) defines "crime of violence" as an "offense that has as an element the use, attempted use, or threatened use of physical force against the person *or property* of another." (Emphasis added). The "or property" language is the only difference between the definitions. *Cf*. U.S.S.G. § 2.L1.2 application note 1(B)(ii)(I).

-11-

Considering the substantially identical phrasing, it is surprising that the majority "question[s] whether *Chapa-Garza* would have read a state of mind requirement into the revised definition of 'crime of violence'" in § 2L1.2. *Maj. Op.* at ___. The *Chapa-Garza* panel, referencing a dictionary, determined the ordinary meaning of the *use of physical force against another* without looking to any of the neighboring language that might distinguish the context of § 2L1.2. It is specious to suppose that had the *Chapa-Garza* panel been faced with the "crime of violence" definition in § 2L1.2, the Court would have referenced a *different* dictionary (perhaps Judge Barksdale's) to define "use." Even more telling, the *Chapa-Garza* panel quotes with approval an excerpt from a Third Circuit case stating that "[u]se of physical force is an intentional act" for purposes of the nearly identical § 16(a). 243 F.3d at 926 (quoting *United States v. Parson*, 955 F.2d 858, 866 (3d Cir. 1993)).

Even if it were possible to distinguish § 2L1.2 and § 16(b) with respect to the meaning of *use of force against another*, § 2L1.2 is a much stronger candidate for the intentionality requirement, implying that, *a fortiori*, *Chapa-Garza* should control. First, § 2L1.2 examines the defendant's state of mind directly, whereas § 16(b), in the passive voice ("may be used in the course of committing the offense") focuses on the nature of the felony. *See Park v. INS*, 252 F.3d 1018, 1024 n.7 (9th Cir. 2001) (explaining the possible difference between § 16(a) and § 16(b) with respect to intent). Second, unlike § 16(b), § 2L1.2 covers threatened and attempted uses of force. Since attempts and threats can only be intentional, *see* BLACK'S LAW DICTIONARY 123, 1489 (7th ed. 1999)*,* their grouping alongside the *actual* use of force suggests that § 2L1.2 was meant to address intentional acts only. *See United States v. Rutherford*, 54 F.3d 370, 373 (7th Cir. 1995) (making the same point with respect to Guideline § 4B1.2). Third, the enhancement referencing § 16(b)'s "crime of violence" is only eight levels, whereas the § 2L1.2 "crime of violence" definition is 16 levels. *Compare* U.S.SG.

§ 2L1.2(b)(1)(A)(ii) *with* U.S.S.G. § 2L1.2(b)(1)(C). Thus, if only one of either § 2L1.2 or § 16(b) ought to require intent, it is the former, not the latter. Today's decision brings about precisely the opposite result.

Turning an ordinary statutory construction principle on its head, the majority relies on the fact that the Sentencing Commission recently revised § 2L1.2—but without explicitly incorporating the *Chapa-Garza* gloss—to suggest the Sentencing Commission intended to repudiate *Chapa-Garza*. It was the prevailing view of the courts of appeals at the time of the 2001 amendments that the *use of physical force against another* was limited to *intentional* use, for purposes of determining whether a crime was a crime of violence. *See Chapa-Garza*, 243 F.3d at 926; *Rutherford*, 54 F.3d at 372-73 (holding drunk driving assault not a "crime of violence" under Guideline § 4B1.1(a)(1)); *Parson*, 955 F.2d at 866 (noting that use of force is an intentional act for § 16(a) purposes). In *Rutherford*, for example, the Seventh Circuit interpreted Guideline § 4B1.2, which is substantially identical to § 2L1.2, as requiring the intentional use of force:

> Force is exerted in many instances where it is not employed for any particular purpose. For example, earthquakes and avalanches involve the exertion of a tremendous amount of force. Such disasters, however, are freaks of nature; we can identify no intelligence or purpose behind them. Referring to a randomly occurring avalanche as a "use" of force would torture the English language. Likewise, a drunk driving accident is not the result of plan, direction, or purpose but of recklessness at worst and misfortune at best. A drunk driver who injures a pedestrian would not describe the incident by saying he "used" his car to hurt someone. In ordinary English, the word "use" implies intentional availment.

54 F.3d at 372-73 (footnote omitted). Against the backdrop of *Chapa-Garza*, *Rutherford*, and *Parson*, and with zero cases to the contrary, it is unthinkable that the Sentencing Commission would have expected that the phrase "use of physical force against the person of another" to be interpreted as the majority has interpreted the phrase. This common sense observation is analogous to the familiar

statutory interpretation principle that "'Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.'" *Meryll Lynch, Pierce, Fenner & Smith, Inc. v. J.J. Curran*, 456 U.S. 353, 382 n.66 (1982) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8 (1975)); *see also Cannon v. Univ. of Chicago*, 441 U.S. 677, 696-97 (1979) (holding a private right of action under Title IX because, when enacted, the courts had already construed the critical language to have created one).

A recent case, *United States v. Caicedo-Cuero*, 312 F.3d 697, 706-11 (5th Cir. 2002), illustrates this principle, coincidentally, in the context of Guideline § 2L1.2. Caicedo-Cuero argued that, with the 2001 amendments, the *guideline* definition of "drug trafficking offense" was intended to supersede the broader *statutory* definition of "drug trafficking offense," even though one subdivision of § 2L1.2 explicitly referenced the statute, instead of the guideline definition. *Id.* at 708. Caicedo-Cuero emphasized the peculiarity that, in imposing the enhancement he received, "a court would have to find that the defendant's prior conviction both *is and is not* a drug trafficking offense." *Id.* (emphasis in original).[12] In rejecting the argument, the Court pointed out that the same peculiarity exists with respect to the multiple definitions of "crime of violence," citing (coincidentally) *Chapa-Garza. Id.* at 707-11. The Court emphasized that the Sentencing Commission apparently approved of the peculiarity: "We presume that the sentencing Commission had knowledge of this practice when it drafted the 2001 amendments." *Id.* at 710.

Moreover, the notes accompanying the 2001 amendments to § 2L1.2 explicitly state that the

---

[12]Caicedo-Cuero received an eight-level sentencing enhancement for having been convicted of an "aggravated felony" under Guideline § 2L1.2; in particular, he had committed a "drug trafficking offense" as defined in 18 U.S.C. § 924(c). *Id.* at 706. Guideline § 2L1.2 contains a *separate* 12-point enhancement for having been convicted of a "drug trafficking offense," as defined more narrowly in the guidelines. U.S.S.G. § 2L1.2 (2001).

amendments are intended to render moot an unrelated circuit split, *see* U.S.S.G. app. C, comment to amend. 632 (2001), further suggesting that the Sentencing Commission was aware of judicial interpretations but chose not to change them. Since *Chapa-Garza*, courts have adopted its interpretation of *use of physical force* with respect to § 16(a), a statute which, again, is virtually identical to the § 2L1.2 definition. *See United States v. Trinidad-Aquino*, 259 F.3d 1140, 1145 (9th Cir. 2001) ("[T]he presence of the volitional 'use . . . against' requirement in both prongs of 18 U.S.C. § 16 means that a defendant cannot commit a 'crime of violence' if he negligently—rather than intentionally or recklessly—hits someone or something with a physical object."); *Bazan-Reyes v. INS*, 256 F.3d 600, 609 (7th Cir. 2001) ("Although a conviction for homicide by intoxicated use of a vehicle requires that the offender actually hit someone, it does not require that he intentionally used force to achieve that result. . .[t]herefore, application of § 16(a) to [defendant's] conviction is foreclosed. . . .); *cf. Dalton v. Ashcroft*, 257 F.3d 200, 206 (2d Cir. 2001) (requiring intent under § 16(b)).

The practical result of today's decision is that the government need not show the intentional use of force for a prior offense to qualify for the 16-level "crime of violence" enhancement, but the government would be required to show the intentional use of force when an eight-level enhancement is sought under the "crime of violence" definition in § 16(b).[13] In other words, a *higher* showing of intentionality is now required to receive the *lesser* enhancement. Not only is that a confusing and

---

[13]The eight-level increase for having committed an "aggravated felony" eventually points to the "crime of violence" definition in 18 U.S.C. § 16. *See* U.S.S.C. § 2L1.2 application note 2 (defining "aggravated felony" by reference to 8 U.S.C. § 1101(a)(43)); *see also* 8 U.S.C. § 1101(a)(43)(F) (defining "aggravated felony" as, among other things, a "crime of violence" under 18 U.S.C. § 16). When *Chapa-Garza* was decided, the "aggravated felony" increase was 16 levels, instead of eight. *See* U.S.S.G. app. C, comment to amend. 632 (2001).

backwards result, the signal it sends to the bench and bar is that the *same* statutory words used in the *same* context cannot be expected to be interpreted alike if the words appear in different sections.

Finally, today's holding will multiply the irrationality of having several definitions of "crime of violence" scattered throughout the U.S. Code and Sentencing Guidelines. *See United States v. Charles*, 301 F.3d 309, 315-16 (5th Cir. 2002) (en banc) (DeMoss, J., specially concurring). By my count, there are no less than *sixteen* instances where the *use of physical force against another* phrasing is used in various definitions in different contexts. *See* 18 U.S.C. § 16 ("crime of violence"); 18 U.S.C. § 521(c)(2) ("criminal street gang"); 18 U.S.C. § 921(1)(33)(A) ("misdemeanor crime of domestic violence"); 18 U.S.C. § 922(d)(8)(B)(ii) (to whom it is prohibited to sell firearms); 18 U.S.C. § 922(g)(8)(C)(ii) (who is prohibited from shipping, transporting, or possessing firearms); 18 U.S.C. § 924(c)(3) ("crime of violence" in firearms offense penalties); 18 U.S.C. § 924(e)(2)(B) ("violent felony" in firearms offense penalties); 18 U.S.C. § 3156 (a)(4) ("crime of violence" in release and detention procedures); 18 U.S.C. § 373 ("solicitation to commit a crime of violence"); 18 U.S.C. § 3559 ("serious violent felony"); 18 U.S.C. § 5032 (when a juvenile may be subject to criminal prosecution); 28 U.S.C. § 540A(c)(1) ("felony crime of violence" for travelers); 21st Century Department of Justice Appropriations Authorization Act, Pub. L. No. 107-273, § 2953, 116 Stat. 1758, 1795-95 (2002) ("violent offender" in law enforcement appropriations); FED. R. CRIM P. 32 ("crime of violence or sexual abuse" in sentencing procedures); U.S.S.G. § 2G1.1(b) (specific offense characteristics of sex crimes); U.S.S.G. § 2L1.2 application note 1(B)(ii) ("crime of violence" for specific offense characteristics of unlawfully remaining or entering the United States); U.S.S.G. § 4B1.2(a) ("crime of violence" in career offender provision). Today's decision sends mixed signals to the bench and bar as to the proper interpretation of those provisions. At the very least, the phrasing

*use of physical force against another* should be interpreted the same under the various definitions of "crime of violence" within the Sentencing Guidelines. Today's decision calls into question even that most basic coherence.

## II. Conflict with *Gracia-Cantu*

In *United States v. Gracia-Cantu*, this Court held that the Texas crime of causing injury to a child was not a "crime of violence" under 18 U.S.C. § 16(a)— again, which is virtually identical to the § 2L1.2 definition—because the "results-oriented" crime does not have as an element the use of force against a person. 302 F.3d 308, 311-12 (5th Cir. 2002). We stated:

> Gracia-Cantu persuasively argues that his prior offense does not constitute a crime of violence under 18 U.S.C. § 16(a) because section 22.04(a) of the Texas Penal Code, the statute criminalizing injury to a child, does not require that the perpetrator actually use, attempt to use, or threaten to use physical force against a child. Rather, section 22.04(a) is results-oriented in that the culpable mental state must relate to the result of a defendant's conduct rather than to the conduct itself.

*Id*. Vargas-Duran was convicted of intoxication assault, which, just like the injury to a child statute, is "results-oriented." *Compare* TEXAS PENAL CODE ANN. § 49.07 (Vernon 1994) (intoxication assault) *with* TEX. PENAL CODE ANN. § 22.04(a) (Vernon 2002) (injury to a child). That is, neither statute mentions using force; both penalize *causing* injury. *Id*.

One possible distinction between the statutes is that it is easy to imagine cases where a child is injured *without* force (neglect, for instance), but it is a bit more difficult to imagine cases where a drunk driver causes serious bodily injury without force. Surely most intoxication assault prosecutions involve a collision, and hence, some force. Nevertheless, the statute does not *require* that the defendant use force. For instance, if a drunk driver swerves off the road, causing a pedestrian to dive into a ditch and become seriously injured, the Texas statute is doubtlessly violated, even though there

has been no actual application of force to anyone. Consider also the case where a drunk driver's near miss causes a heart attack. In this respect, today's decision cannot be squared with *Gracia-Cantu.*

## III. Conclusion

Although I might find the majority's arguments persuasive were we writing on a clean slate or deciding the case en banc, precedent compels me to vote otherwise. I respectfully dissent.