UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-20938
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERNEST SCOTT SHELTON,

Defendant-Appellant,

_____

Appeal from the United States District Court for the
Southern District of Texas
_____

March 18, 2003

Before BENAVIDES and DENNIS, Circuit Judges, and WALTER,[*] District Judge.

BENAVIDES, Circuit Judge:

Ernest Scott Shelton appeals his conviction for unlawful possession of a firearm following a

misdemeanor conviction of domestic violence.  18 U.S.C. § 922(g)(9).  Shelton challenges the

sufficiency of the evidence on several bases, including whether the predicate offense contains an

element of use of force and whether the predicate offense must contain the element of a domestic

relationship between the defendant and the victim.  Guided by the precedent of this and other circuits,

_____

[*] District Judge of the Western District of Louisiana, sitting by designation.

we reject these challenges and conclude that (1) causing bodily injury necessarily includes the element of use of physical force and that (2) the domestic relationship is not required to be an element of the predicate offense. We also reject Shelton's contention that § 922(g)(9) requires knowledge that it was unlawful to possess a firearm after having been convicted of a misdemeanor crime of violence.[1]

## I.        PROCEDURAL HISTORY

Ernest Scott Shelton was charged with the unlawful possession of a firearm following a misdemeanor conviction of domestic violence, in violation of § 922(g)(9) (Count 1), and with making a false and fictitious written statement in connection with the acquisition of a firearm from a licensed dealer (Count 2). Shelton filed pretrial motions to dismiss, alleging that § 922(g)(9) was unconstitutional for violating the notice and fair warning requirements of the Due Process Clause of the Fifth Amendment and for failing to require a substantial effect on interstate commerce. Shelton also argued that, pursuant to § 921(a)(33)(B)(ii), his prior misdemeanor conviction of assault could not be used to support the § 922(g)(9) charge since it did not result in the loss of his civil rights. Shelton's motions were denied by the district court.

Shelton waived his right to a jury trial and agreed to proceed to a bench trial on the § 922(g)(9) charge only[2] based on the following stipulated facts:

---

[1] Shelton also argues that § 922(g)(9) is unconstitutional on its face because it does not require a "substantial" effect on interstate commerce. He recognizes that this claim is precluded by precedent and raises it only to preserve it for further review.

[2] On motion by the Government, count two of the indictment was dismissed.

2

1. On or about July 14, 2000 in the Houston Division of the Southern District of Texas the Defendant, Ernest Scott Shelton, did knowingly possess a firearm, namely, a Winchester 12 gauge shotgun.

2. Agent Carla Mayfield would truthfully testify at trial that the said firearm that was possessed by Defendant on July 14, 2000 was manufactured outside the state of Texas in the state of Connecticut and had therefore been transported from one state to another prior to the Defendant's possession of the firearm in the state of Texas.

3. Prior to Defendant's possession of the firearm on July 14, 2000, the Defendant had been convicted in Harris County Criminal Court at Law #8 of the misdemeanor offense of Assault on March 6, 1998 in cause number 9750538. The Defendant was represented by an attorney and he pled guilty in the case after knowingly and intelligently waiving his right to a trial by jury.

4. The alleged victim in cause number 9750538 is Amanda Alvarado. The assault that the defendant was convicted of in that cause is alleged to have occurred on December 7, 1997. At that time Amanda Alvarado was the defendant's live[-]in girlfriend and had resided with the defendant for approximately two months.

After presentation of the stipulated evidence, Shelton moved for judgment of acquittal. Among other things, Shelton argued that his prior Texas misdemeanor assault conviction did not meet the definition of "crime of domestic violence" for purposes of § 922(g)(9) because it did not require proof that the offense involved "the use or attempted use of physical force" by a person "who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim," as required by § 921(a)(33)(A)(ii).

During oral argument on his motion, Shelton conceded that, by "grabbing the complainant by the shirt and throwing the complainant onto a bed," physical force had been employed during the commission of the misdemeanor assault. The district court found that, with respect to the domestic relationship requirement of § 922(g)(9), a "live-in girlfriend" constituted someone "similarly situated to a spouse" for purposes of § 921(a)(33)(A)(ii). Accordingly, Shelton's motion for acquittal was

3

denied, and the district court found him guilty of the § 922(g)(9) charge.

Shelton filed a post-conviction motion for a new trial, which the district court denied. He was sentenced to 21 months of imprisonment, to be followed by a three-year term of supervised release. Shelton filed a timely notice of appeal.

II. ANALYSIS

A. SUFFICIENCY OF THE EVIDENCE

Shelton raises several challenges to the sufficiency of the evidence to sustain his conviction for possessing a firearm after having been convicted of a misdemeanor crime of domestic violence. 18 U.S.C. §§ 922(g)(9) and 924(a)(2). This Court reviews a district court's finding of guilt after a bench trial to determine whether it is supported by "any substantial evidence." *United States v. Rosas-Fuentes*, 970 F.2d 1379, 1381 (5th Cir.1992). Evidence is sufficient to sustain a conviction if any rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781 (1979). In conducting this inquiry, we examine the evidence as a whole and construe it in the light most favorable to the verdict. *United States v. Lombardi*, 138 F.3d 559, 560-61 (5th Cir.1998). The district court's legal conclusions are reviewed *de novo*. *United States v. Jones,* 172 F.3d 381, 383 (5th Cir. 1999).

Section 922(g)(9) provides as follows: "It shall be unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence . . . [to] possess in or affecting commerce, any firearm or ammunition . . . ." The term "misdemeanor crime of domestic violence"

4

is defined as a misdemeanor under federal or state law that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim." 18 U.S.C. § 921(a)(33)(A). Shelton's prior conviction for misdemeanor assault was pursuant to § 22.01(a)(1) of the Texas Penal Code, which provides that "[a] person commits an offense if the person . . . intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. . . ." Shelton has admitted that the victim of his prior conviction was his "live-in girlfriend" of two months at the time of the assault.

1.      Whether the predicate offense contains the element of use of force

Shelton first argues that his prior conviction for misdemeanor assault pursuant to § 22.01(a)(1) of the Texas Penal Code does not constitute a "crime of domestic violence" within the definition of 18 U.S.C. § 922(g)(9) because the Texas misdemeanor assault statute did not contain the element of "the use or attempted use of physical force."

a.      Fifth Circuit Precedent

Although we have not resolved this precise question with respect to Shelton's offense, this

5

Court has concluded that the Texas offenses of reckless conduct (§ 22.05)[3] and terroristic threat (§ 22.07)[4] do *not* contain the element of "the use or attempted use of physical force." *United States v. White,* 269 F.3d 374 (5th Cir. 2001). In *White,* we explained that the offense of "'recklessly engag[ing] in conduct that places another in imminent danger of serious bodily injury" in violation of § 22.05(a) "does not require that the perpetrator actually 'use' 'physical force' against another (or use it at all)." *Id.* at 382. Immediately after this sentence, in a footnote with a "compare" signal, this Court set forth the elements of § 22.01(a), the instant predicate offense. The government asserts that this footnote distinguished the statute at issue in *White,* which did not require use of physical force, from the instant statute, which does require use of physical force. Although such an interpretation of the footnote is quite plausible, because there is no parenthetical explaining why the cite was preceded by a "compare" signal, it is not entirely clear whether the cite to the instant statute supports the proposition that the instant offense contains the element of "physical force" necessary to satisfy § 921(a)(33)(A)(ii)'s definition of domestic crime of violence. In any event, any such implication would be dictum.[5]

Subsequent to oral argument in the instant case, this Court held that a Texas conviction for

---

[3] In pertinent part, § 22.05(a) provides that: "A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury."

[4] In pertinent part, § 22.07(a) provides that "A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to: (1) cause a reaction of any type to his threat by an official or volunteer agency organized to deal with emergencies; (2) place any person in fear of imminent serious bodily injury . . . ."

[5] Although the government relies in part on Shelton's admission in district court that he used physical force during the assault in question, we look to the elements set forth in the statute-- not the actual conduct to determine whether the offense qualifies as a crime of domestic violence. *See White,* 258 F.3d at 382 (explaining that the "elements of the offense are determined by the statute defining it).

intoxication assault qualified as a "crime of violence" for sentence enhancement purposes. *United States v. Vargas-Duran,* 2003 WL 131712 (5th Cir. Jan. 16, 2003). In that case, the appellant argued that his prior conviction did not constitute a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii) because it did not contain the element of intentional use of force against a person.[6] We disagreed, stating that because the appellant's conviction for intoxication assault required proof that he caused "'serious bodily injury to another,'" such offense "has as an element the *use* of force against the person of another." *Vargas-Duran,* at *1 (quoting Tex. Penal Code Ann. § 49.07 (Vernon 1994)) (emphasis in opinion). More specifically, we explained that "the requirement that the offender "cause[ ] serious bodily injury" encompasses a requirement that the offender use force to cause that injury." *Id.* (brackets in opinion).[7]

Although *Vargas-Duran* is not on all fours with Shelton's case in that it involved the interpretation of the elements of the Texas offense of intoxication assault in the context of a sentencing guideline enhancement (as opposed to the interpretation of the elements of the Texas offense of misdemeanor assault in the context of a 18 U.S.C. § 922(g)(9) conviction for possession of a firearm), the discussion certainly informs the instant question. Applying the analysis of *Vargas-Duran* to the case at bar, it appears the "bodily injury" element of Shelton's predicate offense would also encompass a requirement that Shelton used force to cause the injury. Although Shelton's

---

[6] Under the guidelines, "crime of violence" is defined as an "offense under federal, state, or local law that has an element the use, attempted use, or threatened use of physical force against the person of another . . . ." § 2L1.2, comment. (n.1).

[7] Judge Clement dissented, opining that the holding in *Vargas-Duran* conflicts with other Fifth Circuit precedent, including *Gracia-Cantu*, 302 F.3d 308 (5th Cir. 2002). *Vargas-Duran,* at *4-9 (Clement, J., dissenting). Later in the instant opinion, we distinguish the holding in *Gracia-Cantu* from the case at bar.

misdemeanor offense did not require *serious* bodily injury, we do not believe that renders the analysis inapplicable.

         b.      Precedent from other circuits with respect to § 922(g)(9)

Interpreting a state assault statute nearly identical to the one at issue, the First Circuit held that the phrase "bodily injury" included an element of use of physical force. *United States v. Nason*, 269 F.3d 10 (1st Cir.2001). The First Circuit held that "bodily injury" or "offensive physical contact" under the Maine general-purpose assault statute necessarily involved use of force in the context of a § 922(g)(9) challenge. *Id.* The Maine assault statute provides that "[a] person is guilty of assault if he intentionally, knowingly, or recklessly *causes bodily injury* or offensive physical contact to another." Me.Rev.Stat. Ann. Title 17-A, § 207(1) (emphasis added). The First Circuit stated that all three types of bodily injury (pain, illness, and impairment) set forth in Maine's criminal code are modified by the word "physical." *Nason*, 269 F.3d at 20. The First Circuit then opined that "[c]ommon sense supplies the missing piece of the puzzle: to cause *physical* injury, force necessarily must be *physical* in nature." *Id.* Thus, the Court concluded that physical force is a formal element of assault under the "bodily injury" portion of the Maine misdemeanor assault statute. *Id.*

As stated, the pertinent language of the Maine assault statute is essentially identical to the Texas assault statute in question at bar. Following the reasoning of the First Circuit, we look to Texas's definition of "bodily injury." Under Texas law, "'[b]odily injury' means physical pain, illness, or any impairment of physical condition." § 1.07(a)(8) of the Texas Penal Code. Although the Texas definition modifies "pain" and "impairment" with the term "physical," it does not use the term

8

"physical" to modify illness. Nonetheless, the term "physical" is implicit in any type of "*bodily* injury" inasmuch as "bodily" is defined as "having a body:  PHYSICAL" or "of or relating to the body." Webster's Ninth New Collegiate Dictionary 164 (1984).  As such, the fact that "illness" is not modified by the word "physical" in the context of the Texas statute is a distinction without a difference.

Shelton's predicate offense does contain *bodily* injury as an element. According to *Nason,* the force inflicting such injury must be *physical* in nature, and thus use of physical force is a necessary element of the crime.

Additionally, the Eighth Circuit has reached a similar conclusion. *United States v. Smith,* 171 F.3d 617 (8th Cir. 1999). In *Smith,* the defendant was convicted pursuant to the federal statute in question, § 922(g)(9). The predicate offense was an Iowa assault statute that prohibited an act intended to cause pain, injury or offensive or insulting physical contact. *See* Iowa Code § 708.1(1). Smith argued that mere physical contact would not constitute use of physical force. *Smith*, 171 F.3d at 621 n.2. The Eighth Circuit disagreed, explaining that "physical contact, by necessity, requires physical force to complete." *Id.*

### c.      Shelton's Arguments

Nonetheless, Shelton contends that the instant misdemeanor statute is result-oriented because it is the result of the offense (bodily injury) that is proscribed, not the conduct. Thus, Shelton argues that if the statute does not proscribe any conduct, by definition it does not require that the perpetrator actually use or attempt to use physical force to effect the proscribed result.  In support of this

contention, Shelton relies on a recent decision of this Court. In *Gracia-Cantu*, 302 F.3d 308 (5th Cir. 2002), the appellant argued that the district court erred in enhancing his sentence based on the incorrect conclusion that his prior felony conviction for injury to a child constituted an "aggravated felony" under the sentencing guidelines. U.S.S.G. § 2L1.2(b)(1)(A). To constitute an aggravated felony pursuant to the applicable sentencing guidelines, the prior conviction must have had "as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ." 18 U.S.C. § 16(a).[8] Gracia-Cantu's prior conviction for injury to a child was pursuant to section 22.04(a) of the Texas Penal Code. Section 22.04(a) provides that:

> (a)   A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child . . . :
>
> >   (1) serious bodily injury;
> >   (2) serious mental deficiency, impairment, or injury; or
> >   (3) bodily injury.

We agreed with Gracia-Cantu's assertion that his prior conviction did not constitute a crime of violence under § 16(a) because "the statute criminalizing injury to a child[ ] does not require that the perpetrator actually use, attempt to use, or threaten to use physical force against a child. Rather, section 22.04(a) is *results-oriented* in that the culpable mental state must relate to the result of a defendant's conduct rather than to the conduct itself." *Gracia-Cantu,* 302 F.3d at 311-12 (emphasis added). At first blush, this broad language seems to support Shelton's argument that because his statute of conviction is "result-oriented" it does not require the use of physical force. However,

---

[8] The commentary to § 2L1.2 notes that the definition for "aggravated felony" is set forth in 8 U.S.C. § 1101(a)(43). Section 1101(a)(43)(F) provides the following definition: "a crime of violence (as defined in section 16 of Title 18 . . .) for which the term of imprisonment [is] at least one year." (footnote omitted). Here, we discuss only the definition of "crime of violence" set forth in 18 U.S.C. § 16(a), not the definition in § 16(b).

because *Gracia-Cantu* involved the interpretation of a statute that is materially different from Shelton's predicate offense, we do not find the "result-oriented" label dispositive of the instant question.[9]

We note that, in *Gracia-Cantu,* the government conceded that "because the statutory definition of the offense does not explicitly require the application of force as an element, 18 U.S.C. § 16(a)" did not apply. 302 F.3d at 312. Unlike *Gracia-Cantu,* in the case at bar, the government does not concede the claim but instead argues that the statutory provision at issue does contain an element of use of physical force. Although we certainly do not imply that we were bound by the government's concession in *Gracia-Cantu,*[10] such a concession often dispenses with any need for a detailed analysis of the claim.

In *Gracia-Cantu,* the government did not raise the contention that the element of bodily injury necessarily entailed the use of physical force. Even had such argument been raised, because of the material difference between the injury to a child statute and the instant misdemeanor assault statute, we do not believe it would have made a difference in the analysis or outcome of *Gracia-Cantu.* More

---

[9] We note that Texas case law does describe the offense of aggravated assault as result-oriented. *Green v. State,* 891 S.W.2d 289, 293-94 (Tex.App. – Houston [1st Dist.] 1994); *Peterson v. State,* 836 S.W.2d 760, 764 (Tex.App.–El Paso 1992, pet. ref'd). It appears that the instant misdemeanor offense is a lesser included offense of aggravated assault under § 22.02(a)(1), which provides that "A person commits an offense if the person commits the assault as defined in Section 22.01 [the instant misdemeanor offense] and the person: causes serious bodily injury to another, including the persons's spouse." Thus, the above interpretation of "result-oriented" in the Texas cases would apparently apply to the instant offense. In the above cases, the Texas courts were determining only whether the required mental state applied to the nature of the conduct or the result of the conduct. In other words, the courts did not address the question whether "bodily injury" necessarily includes the use of physical force as an element of assault.

[10] *See Alexander v. United States,* 390 F.2d 101, 108 (5th Cir. 1968) (explaining that this Court is not bound by an erroneous concession made by the government).

11

to the point, although both Shelton and Gracia-Cantu's predicate convictions do contain the element of bodily injury, the injury to a child statute also proscribes acts of *omission* perpetrated against a child, elderly individual or disabled individual. By including acts of omission, the injury to a child statute encompasses conduct that, unlike the instant case, does not require the use of physical force by the defendant. Thus, despite the broad "results-oriented" language, because *Gracia-Cantu* involves a predicate offense that is materially different from that at issue, it is not controlling.

Finally, we note that Shelton has proposed various hypotheticals in which he contends an individual could be charged with misdemeanor assault in Texas without having used physical force. However, no actual cases were cited to support these scenarios. Thus, we are not persuaded by this argument. *See Nason,* 269 F.3d at 20 n.5 (rejecting defense counsel's "exotic exemplars and limit[ing] our probing to actual cases"); *Vargas-Duran,* at *1 (rejecting argument that a defendant could be convicted of Texas offense of intoxication assault for causing serious bodily injury without using physical force after noting no cases supported the proposition).

In conclusion, in light of the Eighth and First Circuits' holdings that bodily injury and physical contact necessarily included an element of use of force in the context of a § 922(g)(9) challenge, our analogous reasoning in *Vargas-Duran* in the context of a sentencing guideline challenge and the absence of a Texas case that indicates that a defendant could be convicted of misdemeanor assault for causing bodily injury without using physical force, we remain unpersuaded by Shelton's arguments. Thus, we hold that because Shelton's predicate offense of misdemeanor assault requires bodily injury it includes as an element the use of physical force.

     2.     Whether the predicate offense must contain the element of a relationship

12

between the defendant and the victim

Shelton also argues that the domestic relationship required by § 922(g)(9) must be contained as an element in the predicate offense.[11] Shelton acknowledges that other circuits have rejected this argument. Looking to the text of § 921(a)(33)(A)(ii), the First and Eighth Circuits held that because Congress employed a singular noun ("element") only the "use of force" was required as an element in the predicate offense. *United States v. Meade,* 175 F.3d 215, 218-19 (1st Cir. 1999); *United States v. Smith,* 171 F.3d 617, 620 (8th Cir. 1999).

The District of Columbia Circuit, although "not necessarily find[ing] the singular versus plural rationale determinative," agreed that a misdemeanor crime of domestic violence includes only the use of force as an element–not the relationship between the defendant and the victim. *United States v. Barnes*, 295 F.3d 1354, 1364 (D.C. Cir. 2002). The District of Columbia Circuit found Congress's syntax awkward, but ultimately concluded that "an unnatural reading would result if 'committed by' were construed to modify 'use of force.'" *Id.* at 1261 & n.7. Additionally, both the District of Columbia Circuit and the First Circuit gave weight to the consideration that requiring the relationship to be an element of the predicate offense "would create a 'significant practical anomaly,' rendering the law a nullity in a majority of the states as well as at the Federal level." *Id.* at 1364 (quoting *Meade*, 175 F.3d at 220).

---

[11] As previously set forth, the term "misdemeanor crime of domestic violence" in § 922(g)(9) is defined as a misdemeanor under federal or state law that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim." 18 U.S.C. § 921(a)(33)(A)(i) & (ii).

13

Very recently, the Second Circuit addressed this issue and discussed the above circuit precedent. *United States v. Kavoukian*, 315 F.3d 139 (2d Cir. 2002). In *Kavoukian,* the Second Circuit recognized that several circuits have determined that any possible ambiguity was "clear[ed] up" by the statute's legislative history. *Id.* at 143 (citing *Barnes,* 295 F.3d at 1365; *Smith,* 171 F.3d at 620; *Meade,* 175 F.3d at 220). The Second Circuit found the following legislative history, a statement from Senator Lautenberg who sponsored the amendment to § 921(a), to be most convincing:

> [T]he final agreement does not merely make it against the law for someone convicted of a misdemeanor crime of domestic violence from possessing firearms. It also incorporates this new category of offenders into the Brady law, which provides for a waiting period for handgun purchases. Under the Brady law, local law enforcement authorities are required to make reasonable efforts to ensure that those who are seeking to purchase a handgun are not prohibited under Federal law from doing so. Mr. President, convictions for domestic violence-related crimes often are for crimes, *such as assault, that are not explicitly identified as related to domestic violence. Therefore, it will not always be possible for law enforcement authorities to determine from the face of someone's criminal record whether a particular misdemeanor conviction involves domestic violence*, as defined in the new law.

*Id.* at 143 (quoting 142 Cong. Rec. S11872-01, *S11878 (1996) (Statement of Sen. Lautenberg)) (other citation omitted; emphasis in opinion). Additionally, Senator Lautenberg stated that "[u]nder the final agreement, the ban applies to crimes that have, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon." *Id.* at 144 (quoting 142 Cong. Rec. S11872-01, *S11877 (1996)).

In view of the weight of the persuasive authority and the above-quoted legislative history, we agree that § 922(g)(9) does not require the predicate offense to contain as an element the relationship

14

between the defendant and the victim.[12]

3.      Whether evidence sufficient to prove victim was similarly situated to a spouse

In the alternative, Shelton argues that the evidence is insufficient to establish that the victim of his predicate offense was similarly situated to a spouse.  It is undisputed that the entirety of the evidence is that Shelton admitted that the victim was his "live-in girlfriend" of two months at the time of the assault.

Shelton asserts that the phrases "cohabit as a spouse" and "similarly situated to a spouse" contained in § 921(a)(33)(A) are not defined in the statute.  In support of his argument that his "live-in" girlfriend of two months does not qualify as a domestic relationship under the statute, Shelton relies on the following definition from Black's Law Dictionary:  "Cohabitation" is "[t]he fact or state of living together, esp[ecially] as partners in life, usu[ally] with the suggestion of sexual relations."  Black's Law Dictionary 254 (7th ed. 1999).  But Shelton's admission that the victim was his "live-in girlfriend" certainly falls within his suggested definition.  "Live-in girlfriend" indicates living together with the implication that the two were having sexual relations.  Accordingly, Shelton's admission was sufficient evidence to prove the victim was similarly situated to a spouse in the context of this

---

[12] *See also United States v. Chavez,* 204 F.3d 1305, 1313-14 (11th Cir. 2000) (holding that the appellant's conviction qualified as a "misdemeanor crime of violence" under § 922(g)(9) because it was pursuant to a federal assault statute, 18 U.S.C. § 113(a)(4), that contained the element of use of force and the offense was committed against a spouse); *United States v. Ball,* 7 Fed. Appx. 210, 213 2001 WL 324624 (4th Cir.) (unpublished), *cert. denied.*, 122 S.Ct. 226 (2001) (finding that § 921(a)(33)(A) does not require the predicate offense to contain as an element the relationship between the defendant and the victim). *Accord United States v. Smith,* 56 M.J. 711 (2001) (concluding that "Congress intended that the predicate offense requires one element:  the use or attempted use of physical force").

15

statute.[13]

        B.        DEFECTIVE INDICTMENT

Shelton contends that his indictment was fatally defective for failing to allege that he knew it was unlawful to possess a firearm subsequent to his misdemeanor assault conviction. This Court reviews *de novo* the district court's decision with respect to challenges to the constitutionality of a federal statute. *United States v. Rasco*, 123 F.3d 222, 226 (5th Cir. 1997).

Shelton recognizes that this Court has held that a conviction under §922(g)(8)[14] does not

_____

[13] Because Shelton's admission constituted sufficient evidence, we find it unnecessary to reach the challenge to the district court's taking of judicial notice with respect to Shelton's admission.

[14]    Section 922(g)(8) provides that:

(g) It shall be unlawful for any person --

    (8) who is subject to a court order that–

        (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

        (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

        (C)(I) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

        (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury[,]

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce,

16

require knowledge that one is violating the law but only of the legally relevant facts. *United States v. Emerson,* 270 F.3d 203, 216-17 (5th Cir. 2001), *cert. denied*, 122 S.Ct. 2362 (2002). Shelton states that, to the extent *Emerson* forecloses this argument, he raises it to preserve the issue for further review. We perceive no principled reason for drawing an analytical distinction between § 922(g)(8) and § 922(g)(9).

Moreover, at least four circuits have concluded that § 922(g)(9) does not require proof that the defendant knew his conduct violated the law. *United States v. Denis,* 297 F.3d 25, 28-31 (1st Cir. 2002); *United States v. Hancock,* 231 F.3d 557, 561-63 (9th Cir. 2000); *United States v. Hutzell,* 217 F.3d 966, 968-69 (8th Cir. 2000); *United States v. Beavers*, 206 F.3d 706, 710 (6th Cir. 2000).

Shelton recognizes the weight of authority against him but nonetheless argues that he falls within a due process exception to the general rule that ignorance of the law or a mistake of law is no defense. In *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240 (1957), the petitioner challenged a provision of the Los Angeles Municipal Code that prohibited convicted felons from remaining in the city for longer than five days without registering with the police. Notwithstanding the general rule that ignorance of the law is no excuse, the Supreme Court held that the ordinance gave such insufficient notice that due process was violated. *Lambert*, 355 U.S. at 229-30, 78 S.Ct. 240. Two factors persuaded the Court. First, the prohibited conduct was "wholly passive." Second, there was an absence of "circumstances that should alert the doer to the consequences of his deed." *Id.* at 228.

We agree with the other circuits that have rejected the argument that § 922(g)(9) falls within

---

any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

17

the *Lambert* due process exception. *See e.g., Denis,* 297 F.3d at 29-30; *Hancock,* 231 F.3d at 564. Possession of a firearm is active, not passive, conduct. That alone renders the *Lambert* exception inapplicable. Under these circumstances, Shelton has failed to show that his indictment was fatally defective.[15]

### C.    SUBSTANTIAL EFFECT ON INTERSTATE COMMERCE

Finally, Shelton argues that § 922(g)(9) cannot constitutionally be construed to encompass the intrastate possession of a firearm simply because the firearm was transported across state lines at some point. We have repeatedly rejected this claim. *See e.g. United States v. Daugherty,* 264 F.3d 513, 518 (5th Cir. 2001). Recognizing that this panel is bound by prior precedent, Shelton raises this issue to preserve it for further review.

In the alternative, Shelton argues that the evidence was insufficient to prove the interstate commerce element. In the district court, Shelton stipulated that he unlawfully possessed a shotgun that had been manufactured in Connecticut and traveled in interstate commerce to Houston, Texas. This Court has "made clear that stipulated evidence showing that a weapon was manufactured outside of the state in which it was possessed was sufficient to support a conviction." *United States v. Lee,*

_____

[15]    With respect to the second inquiry, other circuits have indicated that possession of firearm by one who has been convicted of a violent crime is a highly regulated activity. *Denis,* 297 F.3d at 29-30; *Hancock,* 231 F.3d at 564; *Hutzell*, 217 F.3d at 969. As such, the courts have concluded that a domestic violence conviction should alert the defendant of the consequences of his deed. Shelton contends that one does not associate misdemeanor convictions with the same sort of loss of privilege as felony convictions. In any event, as set forth above, because possession of a firearm is not "wholly passive," *Lambert* is inapplicable.

310 F.3d 787, 788 (5th Cir. 2002).  This claim must fail.

      Accordingly, the district court's judgment is AFFIRMED.