**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 19, 2013

No. 12-40589

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DAVID VILLARREAL,

Defendant - Appellant

Appeals from the United States District Court
for the Southern District of Texas

Before OWEN and HAYNES, Circuit Judges, and LEMELLE, District Judge.[*]

PER CURIAM:

Defendant-Appellant David Villarreal appeals his conviction and sentence for conspiring to and possessing with the intent to distribute more than five kilograms of cocaine. We AFFIRM.

Border Patrol agents inspected Villarreal's car at a border checkpoint whereupon they discovered ten bundles of a white powdery substance that they believed to be methamphetamine. Laboratory analysis revealed that the packages contained cocaine and weighed 8.4 kilograms. The bundles were separated into two groups: one group had a net weight of 2.5 kilograms and a

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

No. 12-40589

cocaine purity of .41%; the other had a net weight of 5.9 kilograms and a cocaine purity of 3.2%.

Villarreal was charged with conspiring to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and for possessing with intent to distribute more than five kilograms of cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), (b)(1)(A). He proceeded to a bench trial on stipulated facts and was convicted and sentenced to the mandatory minimum term of 120 months. The court held Villarreal accountable only for the 5.9 kilograms of 3.2% purity, terming the other 2.5 kilograms as "junk."

Although styled as separate challenges to his conviction and sentence, Villarreal's arguments boil down to one point: that the district court erred in using 5.9 kilograms because that mixture was substantially diluted, albeit less so than the 2.5 kilograms. He argues that if the court had considered only the weight attributable to the actual cocaine, he could not have been found guilty of crimes requiring more than five kilograms. Additionally, his sentencing analysis would have been different. Thus, Villarreal challenges the legal—not factual—basis for considering the entire 5.9-kilogram amount as "cocaine," under the unrebutted evidence presented.

"This [c]ourt reviews a district court's finding of guilt after a bench trial to determine whether it is supported by any substantial evidence." *United States v. Shelton*, 325 F.3d 553, 557 (5th Cir. 2003) (quotation marks omitted). "The district court's legal conclusions are reviewed *de novo*." *Id.* Similarly, we review a district court's interpretation or application of the Guidelines de novo. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

Our disposition of both the conviction and sentencing issues is controlled by *Chapman v. United States*, 500 U.S. 453 (1991). In that case, the Supreme Court construed the statute's reference to a "'mixture or substance containing

2

No. 12-40589

a detectable amount,'" *see* 21 U.S.C. § 841(b), to mean that "[s]o long as [the substance] contains a detectable amount, the entire mixture or substance is to be weighed when calculating the sentence." *Chapman*, 500 U.S. at 459. The Court distinguished other sections of the statute that prescribe mandatory minimums "based *either* on the weight of a *mixture or substance* containing a detectable amount of the drug, *or* on lower weights of [the pure drug]." *Id.* (citing § 841(b)(1)(A)(iv)). In view of that distinction, the Court reasoned that "Congress knew how to indicate that the weight of the pure drug was to be used to determine the sentence, and did not make that distinction with respect to [the drug at issue there]." *Id.* Although *Chapman* dealt with LSD, the Court specifically mentioned cocaine as a type of drug that is typically "cut" with an inert substance, the weight of which Congress intended to be included for sentencing purposes. *Id.* at 459-60. ("In some cases, the concentration of the drug in the mixture is very low. But, if the carrier is a 'mixture or substance containing a detectable amount of the drug,' then under the language of the statue the weight of the mixture or substance, and not the weight of the pure drug, is controlling." (citations omitted)).

The chemist in this case stated that she had tested samples that were similarly low in purity to the 3.2%-pure, 5.9-kilogram sample and that the sample "appeared to be in a state that could be ingested by a drug consumer." Her testimony supported the conclusion that the substance that was mixed with the cocaine is a common adulterant, i.e., the type of "dilutant, cutting agent, or carrier medium" that Congress intended to include in the weight of this drug. *See id.* at 460. Because Villarreal possessed a "'mixture or substance containing a detectable amount of [cocaine],' . . . the weight of the mixture . . . and not the weight of the pure [cocaine], is controlling." *See id.*[1]

---

[1] Because this mixture was usable in its diluted form, it is different from cases where we concluded that the entire weight of the substance could not be used. *See, e.g., United States*

No. 12-40589

The sentencing analysis is similarly clear: the Guidelines specifically provide that "the weight of a controlled substance . . . refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2D1.1(c) n.(A) (2011). The commentary defines "mixture or substance" as having "the same meaning as in 21 U.S.C. § 841, except as expressly provided. Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used." U.S.S.G. § 2D1.1 cmt. n.1. Accordingly, the district court likewise did not err in using 5.9 kilograms to calculate Villarreal's sentence.

AFFIRMED.

---

*v. Palacios-Molina*, 7 F.3d 49, 52 (5th Cir. 1993) (refusing to include the weight of wine in which cocaine was transported for sentencing purposes because it was the "functional equivalent of packaging material").

4