# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D2022-2914
_____

J.C.,

    Appellant,

    v.

DEPARTMENT OF AGRICULTURE
AND CONSUMER SERVICES,
DIVISION OF LICENSING,

    Appellee.

_____


On appeal from the Department of Agriculture and Consumer Services.
Shelby Scarpa, Assistant Commissioner of Agriculture.

May 22, 2024


B.L. THOMAS, J.

J.C. appeals a final order of the Department of Agriculture and Consumer Services denying him a concealed-firearm license, purportedly under the authority of section 790.06(2)(n), Florida Statutes (2020). That section provides that the Department can deny this license if the person is otherwise "prohibited from possessing or purchasing a firearm . . . [under] federal law." § 790.06(2)(n), Fla. Stat. The Department contends that 18 U.S.C.

§ 922(g)(9)[1] and 18 U.S.C. § 921(a)(33)(A)(ii) support the decision to deny the license. These laws prohibit a person from purchasing or possessing a firearm if he or she has been convicted of a "misdemeanor crime of domestic violence," which includes as an "element," the use of force against certain persons comparable to a spouse. J.C. was not convicted of a crime of domestic violence, as those offenses are defined in section 741.28, Florida Statutes (2014). Thus, the Department's decision could only be lawfully based on the federal definition of a misdemeanor crime of domestic violence.

Because the Department failed to prove that the victim of J.C.'s misdemeanor conviction under section 784.03, Florida Statutes (2014), was comparable to a spouse, as then required by these laws, we reverse. We direct the Department to issue the concealed-carry license to J.C., for which he was otherwise eligible.

By denying issuance of the license, the Department deprived J.C. of his constitutional and statutory right to effectively possess a firearm for personal self-defense outside his home. No one can fully exercise their Second Amendment right to armed self-defense without carrying a concealed firearm. As recognized by the Legislature, section 790.06 "shall be liberally construed to carry out the constitutional right to bear arms for self-defense" and "is supplemental and additional to existing rights to bear arms, and *nothing in this section shall impair or diminish such rights.*" § 790.06(16), Fla. Stat. (2020) (emphasis added).

J.C. was convicted in Duval County, Florida, of the offense of battery, based on his plea to that offense. In the transcript from that plea hearing, the trial court advised J.C. that he was charged with "battery" and sentenced him to nine months of probation. That would not have been a lawful sentence for domestic violence battery. *See* § 741.281, Fla. Stat. (requiring that when a person is sentenced for "a crime of domestic violence, as defined in s. 741.28, that person shall be ordered by the court to a minimum term of 1 year's probation"). Although J.C. agreed to complete the batterers' intervention program as established by section 741.281, Florida

---

[1] This statutory subsection is a provision of the Federal Gun Control Act also known as the Lautenberg Amendment.

Statutes, this agreement did not convert the conviction of simple battery into a conviction and sentence for a crime of domestic violence. *See Kingry v. State*, 28 So. 3d 173 (Fla. 1st DCA 2010) (allowing a defendant as part of a plea agreement to agree to conditions of probation that would not otherwise be required by statute).

There was no judicial finding that J.C. committed a misdemeanor crime of domestic violence, as defined in section 741.28, Florida Statutes:

> (2) "Domestic violence" means any . . . battery . . . resulting in physical injury or death of one family or household member by another family or household member.

> (3) "Family or household member" means . . . persons who . . . have resided together in the past as if a family . . . . With the exception of persons who have a child in common, the family or household members must be currently residing or have in the past resided together in the same single dwelling unit.

§ 741.28, Fla. Stat.

Despite these facts, eight years after his misdemeanor conviction under section 784.03, Florida Statutes, when J.C. applied for a concealed-carry license, the Department denied issuance of the license, after it decided that his misdemeanor conviction qualified as a crime of domestic violence under 18 U.S.C. § 922(g)(9), because the victim of J.C.'s misdemeanor offense was comparable to a spouse. The Department sent a letter to J.C. notifying him of its decision to deny the application under section 790.06(2)(n).

J.C. timely requested a formal administrative hearing pursuant to section 120.57(1), Florida Statutes. The Department initially denied the request but ultimately referred its denial of the license and J.C.'s challenge to the Division of Administrative Hearings, at which evidence and testimony was heard.

The evidence showed that in mid-October 2014, J.C. drove from Jacksonville to Apple Valley, California, to visit his uncle. While there, he began a sexual relationship with A.K. But a few weeks later, J.C. went back to Jacksonville, and A.K. traveled with him. Shortly after arriving in Jacksonville, on December 8, 2014, was alleged to have battered A.K. The day after the arrest, J.C. appeared before the county court, where the court withheld adjudication and placed J.C. on probation for battery.

Shortly thereafter, J.C. and the State agreed that his probation would be revoked, and the court imposed a sentence of time served in the county jail. There was no requirement that J.C. complete the batterers' intervention program.

The administrative law judge in his recommended order[2] found that "[t]he credible testimony provided by various law enforcement witnesses and [J.C.'s] own statements and testimony established by a preponderance of the evidence that the parties were living together in an intimate relationship for about two months." The order further concluded that "[t]he preponderance of the evidence in the case proved that [J.C.'s] relationship with A.K. was similar to that of a spouse." That order concluded that "[J.C.'s] battery against A.K. constituted a misdemeanor crime of domestic violence, as defined under 18 U.S.C. § 921(a)(33)(a)(ii)."

The Department issued a final order incorporating the recommended factual findings and conclusions of law and denied issuance of the license to J.C.

First, we address the Department's argument that this appeal is moot because the Legislature repealed the requirements that some persons must obtain a concealed-carry license. That is, under current law, a person may carry a concealed firearm without

---

[2] J.C. was adjudicated and sentenced to misdemeanor battery, which is not defined as a crime of domestic violence under *state law*. J.C. raises a compelling argument that neither the Department nor an administrative law judge, applying a lower standard of proof, can reclassify that conviction—in an Article V court—as a misdemeanor crime of domestic violence.

obtaining a license authorizing this concealed-firearm, *under certain conditions.*

Section 790.01, Florida Statutes, provides:

(1)  A person is authorized to carry a concealed weapon or concealed firearm, as that term is defined in s. 790.06(1), if he or she:

(a)  Is licensed under s. 790.06; or

(b)  Is not licensed under s. 790.06, but otherwise satisfies the criteria for receiving and maintaining such a license under s. 790.06(2)(a)-(f) and (i)-(n), (3), and (10).

And "a person who does not meet the criteria listed above in [section 790.01(1)] and who carries a concealed firearm . . . on or about his or her person commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084." § 790.01(3), Fla. Stat. Thus, *despite this statutory provision,* J.C. cannot carry a concealed firearm without the license, without committing a felony under state law under section 790.01, Florida Statutes, where the Department has denied his request for that license. Without the lawful right to carry a concealed firearm, J.C. cannot effectively exercise his constitutional rights under the Second Amendment. *See District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (finding that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation").

18 U.S.C. § 922(g)(9) provides:

(g) It shall be unlawful for any person--

. . .

(9) who has been convicted in any court of a misdemeanor crime of domestic violence,

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition

which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 921(a)(33)(A) (2020) stated:

> Except as provided in subparagraphs (B) and (C), the term "misdemeanor crime of domestic violence" means an offense that--
>
> (i) is a misdemeanor under Federal, State, Tribal, or local law; and
>
> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or *has cohabited with the victim as a spouse*, parent, or guardian, *by a person similarly situated to a spouse*, parent, or guardian of the victim.

(emphasis added).

Having concluded that this appeal is not moot, we explain why the Department erred in denying J.C.'s application for a concealed-firearm license on grounds that he had committed a misdemeanor crime of domestic violence. The Department concluded that J.C.'s state battery conviction was the equivalent to the misdemeanor offense of domestic violence because the relationship between J.C. and the victim was similar to a spousal relationship. The Department erred because no competent, substantial evidence was introduced at the administrative hearing that would persuade a reasonable factfinder that the victim's brief dating relationship with J.C. was comparable to that of a spousal relationship.

We recognize that under current federal law, the offense of domestic violence may be committed when the defendant and the victim are or have been in a dating relationship. In 2022, Congress amended 18 U.S.C. § 921(a)(33)(A)(ii) to include a dating relationship in the definition of the relational element of the offense of domestic violence:

6

(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, by a person similarly situated to a spouse, parent, or guardian of the victim, *or by a person who has a current or recent former dating relationship with the victim*.

(emphasis added).

But Congress clarified that a "dating relationship" must be or have been a "continuing serious relationship of a romantic or intimate nature." 18 U.S.C. § 921(37)(A); Bipartisan Safer Communities Act § 12005(a), Pub. L. No. 117–159, 136 Stat. 1332. Important here, this revised definition—colloquially described as "closing the boyfriend loophole,"—does not apply retroactively by its terms in Public Law 117–159. *See* Bipartisan Safer Communities Act § 12005(b), Pub. L. No. 117–159, 136 Stat. 1332 (stating that amendments in section 12005(a) of the Act "shall not apply to any conviction of a misdemeanor crime of domestic violence entered before the date of enactment of this Act"). Thus, where a couple before 2022 were not current or former spouses, the federal law cannot serve as a basis for denying issuance of the license in cases involving facts such as existed here, where the relationship between the perpetrator and victim was not comparable to a spousal relationship.

The Department had the burden of persuasion to establish, through evidence, that the victim of J.C.'s state misdemeanor conviction, which was not a crime of domestic violence under state law, was comparable to J.C.'s "spouse" under federal law. A.K. did not testify at the administrative hearing. No evidence showed the couple owned real property together, signed a lease together, maintained a joint bank account or other jointly owned personal property, held themselves out as "spouses," or otherwise could be considered to be the equivalent of a married couple.

Instead, the relationship between J.C. and A.K., to the extent there was a "relationship," was quite brief and lacked the

7

hallmarks of a marriage. The two lived together for only approximately six weeks prior to the offense that led to J.C.'s battery conviction.[3] Police reports provided very little description of the relationship beyond the fact of the couple's brief cohabitation. There was no evidence presented that the two held themselves out as a married couple, socialized as a married couple, or even acted as a married couple in any manner whatsoever. Indeed, at the time of the offense, the victim referred to J.C. as her "ex-boyfriend."

A relationship comparable to a "marriage" is not proven solely by a brief cohabitation and sexual relations. A marriage and a spousal relationship require that a couple decide to permanently enter into a bond that entails legal responsibilities to each other, such as the decision to raise children, the necessity to mutually support each other in difficult circumstances, and other indicia of a permanent, lawful relationship. *Compare In re Cummings Estate*, 479 A.2d 537, 541–43 (1984) (holding that even a lengthy cohabitation and other indicia of a marriage could not establish a marital relationship, absent proof the parties intended to hold themselves out as married). When compared to facts where a marital relationship was established, the facts here show the opposite. *See, e.g., Morris v. Morris,* 463 S.W.2d 295 (Tx. Ct. of Civ. App. 1971) (finding that the evidence established an agreement between the parties to become husband and wife, where the parties executed numerous documents as husband and wife, including deeds and tax returns, and also lived together as husband and wife). And when the state attempts to deprive a citizen of his or her Second Amendment rights on the basis of a federal law that requires the state to prove by (at least) a preponderance of evidence that the person committed a misdemeanor crime of "domestic" violence, the State must present far more evidence than was submitted here.

---

[3] It was J.C.'s conviction pursuant to this arrest that was the basis for which the Department found that J.C. had been convicted of a "misdemeanor crime of domestic violence." Although J.C. was arrested two other times for battery on A.K., the State later dropped that charge.

Even so, the Department argues that a live-in girlfriend can be similarly situated to a spouse. The Department relies on the decision in *United States v. Shelton,* 325 F.3d 553 (5th Cir. 2003), where the court held in a federal case involving an alleged misdemeanor offense of domestic violence that the defendant's two-month "live-in girlfriend" met the requisite federal definition of a person similarly situated to a spouse. We do not find that decision persuasive. The Fifth Circuit provided no analysis of why such a brief duration of cohabitation with the "implication" of sexual relations would constitute a couple holding themselves out as a married couple. *See id.* at 563. The Fifth Circuit noted no other factors such as those present here.

A decision we do find helpful is an unpublished decision where the First Circuit described several factors in a brief relationship between the victim and the defendant that bore the hallmarks of the commitment found in a more permanent spousal relationship:

> Costigan met [M.S.] in October or November 1995. He moved in with her and her three children from prior marriages soon thereafter and he and Santos shared a sexual relationship. Costigan kept his clothes at their home in a dresser purchased for that purpose. The couple and Santos's children *moved to an apartment that Costigan found for them*. The couple and the children *ate together as a family* and had a regular Tuesday family pizza night. *Costigan built a fence at the new apartment. He participated in the discipline of the children, played with them, gave them money, attended their school activities and formed a bond with them. Costigan's relatives visited and considered the couple as living together*.

*United States v. Costigan*, 18 F. App'x 2, 5 (1st Cir. 2001) (emphasis added). There is no similar evidence of a spousal relationship in the instant case.

Here the ALJ had to determine whether the evidence supported a finding that J.C.'s victim was similarly situated to a spouse under 18 U.S.C. § 921(a)(33)(A) (2020). The Department could not deny J.C. a concealed-carry license, based on a prior misdemeanor that specifically does not qualify as a crime of

9

domestic violence under state law. A "live-in" relationship for a very brief time is not similarly situated to a relationship between married persons. Because the victim was not a person similarly situated to a spouse within the meaning of the federal statute, the Department erred when it concluded that J.C.'s state law battery conviction was a misdemeanor offense of domestic violence that disqualified him under federal and state law from receiving a concealed-carry license.

Because this case can be decided on statutory grounds, we do not reach J.C.'s arguments based on the Second Amendment. Even so, we recognize the important constitutional and fundamental right at stake here that provide the appropriate context of our decision. *See N.Y. State Rifle & Pistol Assoc., Inc. v. Bruen*, 597 U.S. 1 (2022); *Heller,* 554 U.S. 570 (2008). We reverse because no competent substantial evidence supports the Department's legal conclusions that the relationship between J.C. and A.K. was comparable to a marital relationship.

REVERSED.

ROWE, J., concurs; BILBREY, J. concurs in result.

––––––––––––––––––––––––––

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

––––––––––––––––––––––––––

BILBREY, J., concurring in result.

I agree with the result reached by the majority opinion. Although I may read 18 U.S.C. § 921(a)(33)(A)(ii) more broadly than the majority, I agree that there was insufficient evidence that Appellant committed a misdemeanor crime of domestic violence as defined by federal law in 2015. *See* 18 U.S.C. §§ 921(a)(33)(A), 922(g)(9) (2015).[1] Since the proof that Appellant was prohibited

---

[1] In *United States v. Hayes*, 555 U.S. 415 (2009), the United States Supreme Court interpreted the meaning of "misdemeanor crime of domestic violence" as defined in 18 U.S.C. § 921(a)(33)(A).

from "purchasing or possessing a firearm by any other provision of Florida or federal law" was insufficient, *see* section 790.06(2)(n), Florida Statutes (2020), the Department erred in refusing to issue a concealed weapon license. I also write to point out a key difference between Florida and federal law and to offer a word of caution to Appellant about the confines of our holding.

Appellant would be prohibited from possessing a firearm under federal law, and therefore ineligible for a Florida concealed weapon license, if it was proven that he had "cohabited with the victim [of the battery] as a spouse." 18 U.S.C. § 921(a)(33)(A)(ii). Florida abolished common law marriages "after January 1, 1968." § 741.211, Fla. Stat.[2] But the majority opinion should not be read to require a common law marriage to satisfy the "cohabited" requirement for two reasons.

First, federal courts discerning the meaning of "cohabited with the victim as a spouse" have not required a common law marriage. *See United States v. Costigan,* CRIM. 00-9-B-H, 2000 WL 898455, at \*3 (D. Me. June 16, 2000), *aff'd*, 18 Fed. Appx. 2 (1st Cir. 2001) ("Congress was reaching broadly and was not limiting the prohibition to domestic violence occurring in legal or common law marriages."); *United States v. Cary*, 1:07-CV-074-

_____

The Court determined that the requirement in 18 U.S.C. § 921(a)(33)(A)(ii) that the crime must "committed by" a "person who has a specified domestic relationship with the victim" does not make domestic violence an element of the crime. *Hayes*, 555 U.S. at 421. For Appellant, that means that just because he was not charged with a crime requiring proof of domestic violence as an element, the Department could have proven that he could not possess a firearm without violating federal law if it is proven that he "has cohabitated with the victim as a spouse" or that the victim was "similarly situated to a spouse." *See* 18 U.S.C. § 921(a)(33)(A)(ii).

[2] Florida continues to recognize "a common law marriage when entered into in a state which recognizes common law marriages." *Anderson v. Anderson*, 577 So. 2d 658, 660 (Fla. 1st DCA 1991) (citing *Johnson v. Lincoln Square Props.*, 571 So. 2d 541 (Fla. 2d DCA 1991)).

WSD, 2008 WL 879433, at *4 (N.D. Ga. Mar. 29, 2008) (citing the district court *Costigan* decision for the same proposition). Rather, the federal courts have considered:

> the length of the relationship; shared residence as indicated by spending the night and keeping one's belongings at the residence; intimate relations; expectations of fidelity and monogamy; shared household duties; regularly sharing meals together; joint assumption of child care; providing financial support; moving as a family unit; joint recreation and socialization; and recognition of the live-in relationship by family and friends as indicated by visits to the residence.

*Costigan*, 18 Fed. Appx. at 5. The evidence here could not satisfy most of these factors.

Second, reading the "cohabited" language to require a common law marriage would be inconsistent with the rules of statutory construction. In the same long sentence in 18 U.S.C. § 921(a)(33)(A)(ii) discussing "cohabited," a "current or former spouse" is explicitly mentioned. In states that recognize common law marriage, a common law spouse is treated the same as a spouse from a legal, ceremonial marriage. *See Piel v. Brown*, 361 So. 2d 90 (Ala. 1978); *Carter v. Firemen's Pension Fund of City & Cnty. of Denver*, 634 P.2d 410 (Colo. 1981). So "current or former spouse" includes a common law spouse and reading the "cohabitated . . . as a spouse" language to mean the same thing would make the preceding language surplusage contrary to the rules of statute construction. *See Heart of Adoptions, Inc. v. J.A.*, 963 So. 2d 189, 199 (Fla. 2007) (citations omitted) (requiring courts to "avoid readings that would render part of a statute meaningless" and to "give full effect to all statutory provisions").

Turning to the "similarly situated to a spouse . . . of the victim" language in 18 U.S.C. § 921(a)(33)(A)(ii), that does not require cohabitation between the victim and perpetrator. *See United States v. DeFrance*, CR 21-29-M-DLC, 2023 WL 4531828, at *3 (D. Mont. July 13, 2023) (holding that an "interpretation of 'similarly situated to a spouse' to require cohabitation would render it superfluous to the preceding category: cohabitating with

12

the victim as a spouse"). Rather, the other factors discussed in the *Costigan* cases could show that the perpetrator was "similarly situated to a spouse" even if the parties were not cohabitating.

Next, it should be noted that the definition of domestic violence under Florida law is not identical to federal law. *Compare* § 741.28(3), Fla. Stat., *with* 18 U.S.C. § 921(a)(33)(A). In some ways Florida law is broader than federal law. In Florida, domestic violence can be committed against "persons related by blood or marriage" if they reside or resided together in the past. § 741.28(3). Domestic violence can also be committed against "persons who are presently residing together as if a family or who have resided together in the past as if a family." *Id.* I agree with the majority opinion that Appellant did not commit the crime of domestic violence under Florida law.[3] However, even if Appellant had committed domestic violence under only Florida's broader definition, then the prohibition on possessing firearms would have

---

[3] In the transcript from his plea, the trial court advised Appellant that he was charged with "battery." Because Appellant entered a guilty plea to the charge at his first appearance before the trial judge, we do not have an information specifying the charge. The arrest report does not mention domestic violence or reference the domestic violence statute, section 741.28, Florida Statutes. The arrest report lists the charge as "Battery – Touch or Strike – No Injury – Dating Violence" and cites only the simple battery statute, section 784.03(1)(A)1., Florida Statutes. As the majority opinion states, the "boyfriend loophole" was closed in 2022 by adding "current or recent former dating relationship" to the class of domestic relationships covered by 18 U.S.C. §§ 921(a)(33)(A). *See* Bipartisan Safer Communities Act § 12005(a), Pub. L. No. 117-159, 136 Stat. 1332. While I believe there was proof that Appellant was in a dating relationship with the victim, the amendment to close the "boyfriend loophole" does not apply retroactively. *See* Bipartisan Safer Communities Act § 12005(b), Pub. L. No. 117-159, 136 Stat. 1332. So closing the "boyfriend loophole" does not preclude Appellant from possessing a firearm under federal law.

just been for three years after his jail sentence was complete. *See* § 790.06(2)(l), Fla. Stat.

Finally, Appellant should be advised that our decision here to require issuance of a concealed weapons license under Florida law does not immunize him from the possibility of being found in violation of federal law in the future. The Department did not supply sufficient proof here, and we do not have all the facts concerning Appellant's relationship with the victim. But if the facts showed that he "has cohabited with the victim as a spouse" or that the victim was "similarly situated to a spouse," then in the future the federal government could prove that Appellant had been "convicted . . . of a misdemeanor crime of domestic violence" and was therefore prohibited from possessing firearms. *See* 18 U.S.C. §§ 921(a)(33)(A)(ii), 922(g)(9).

------------------------------

Eric J. Friday, Jacksonville, for Appellant.

Genevieve Hall, Department of Agriculture and Consumer Services, Division of Licensing, and Daniel E. Nordby, Shutts & Bowen LLP, Tallahassee, for Appellee.